**Deibert v. Pennsylvania Turnpike Commission**

178

C.P. of Lehigh County, no. 2006-C-0084.

*Victor F. Cavacini*, for plaintiffs.

*Brian R. Tipton*, for defendant Pa. Turnpike Commission.

*Paul G. Lees*, for defendant PA Gianni Homes, Inc.

*Philip Daniel Priore*, for defendants Corrado Homes and Minesite.

*John D. Kearney*, for defendant Lower Macungie Township.

JOHNSON, *J.*, October 20, 2010—

## I. INTRODUCTION

Before the court for consideration is the plaintiff's first amended complaint filed June 5, 2006 and plaintiff's second amended complaint filed August 5, 2009. A non-jury trial was held on September 21 - 25, October 2 and November 13, 2009. The court bifurcated the case, hearing all but the punitive damages claims and cross-claims. Each count of the amended complaint will be addressed below after section II. The court will address the equity counts as to each defendant after the court addresses the counts in trespass and negligence against the subject defendant.

## II. FINDINGS OF FACT

1. Deibert and Borowski are the record owners of land located in Lower Macungie adjacent to and near (west of) the Pennsylvania Turnpike at or about mile post A54.4 southbound on the Northeast Extension of the Pennsylvania Turnpike.

2. Deibert and Borowski improved their land with the erection of single-family residences and other structures.

3. On or about December 20, 2004, Corrado obtained legal and equitable title to land adjacent to and near (east of) the Pennsylvania Turnpike at or about mile post A54.4 southbound on the Northeast Extension of the Pennsylvania Turnpike. This land contained thirty-eight (38) acres which Corrado subdivided into approximately fifty-nine (59) lots for single-family development and facilities related thereto and named it the "Corrado Homes

Development."

4. The subject lands are within a watershed known as the Little Lehigh Creek Watershed ("Watershed").

5. Corrado, as a real estate developer, sought subdivision and land development approval from LMT for the construction of single-family homes on approximately fifty-four (54) lots in the "Corrado Homes Development."

6. On January 15, 2004, LMT approved the Corrado Homes Subdivision under the Lower Macungie Township Subdivision and Land Development Ordinance ("SALDO") which includes a storm water management ordinance.

7. The approval of the Corrado Homes Development included approval of a storm water management plan.

8. Corrado assigned its right, title and interest under an agreement of sale to Minesite (hereinafter, the court will refer to Minesite and Corrado collectively as "Corrado").

9. On or about March 16, 2005, Corrado conveyed a portion of the Corrado Homes Development, developed as Phase I, to Gianni, who then renamed said portion "Hidden Valley Meadows Development."

10. On January 21, 2005, a subdivision improvement agreement was entered into between LMT and Corrado for the portion of the Corrado Homes Development known as phase II, which continued to be named "Corrado Homes Development" and contained twelve (12) lots.

11. On February 9, 2005 a subdivision improvement agreement was entered into between LMT and Gianni for

the portion of the Corrado Homes Development known as Phase I, which was renamed "Hidden Valley Meadows" and contained thirty-nine (39) lots.

12. The subdivision improvement agreements between LMT and Corrado and Gianni both state as follows:

Upon delivery of the executed Subdivision Improvement and Maintenance Agreements, the recording of the final subdivision plan, the dedication of all required land and improvements, the delivery of the required construction security, and posting of the required insurance, developer shall be entitled to proceed with the Subdivision and to issuance of building permits.

13. Pursuant to the subdivision improvement agreements, LMT issued building permits to Corrado and Gianni, so that, at the present time, many of the lots contain homes which are occupied by vendees of Corrado and Gianni.

14. Gianni installed the storm water management facilities located within the Corrado Homes and Hidden Valley Meadows Developments.

15. On or about March 9, 2005, LMT accepted the dedication of land containing the surface water management facilities and streets and other improvements required under the subdivision improvement agreements for the Corrado Homes and Hidden Valley Meadow Developments. The parties stipulated that deeds of dedication for this land were recorded with the Lehigh County Recorder of Deeds Office on March 15, 2005 by Jean Mohr, an employee of the LMT engineer, Keystone Engineering ("Deeds of Dedication").

16. Prior to the construction of the Northeast Extension of the Pennsylvania Turnpike in the 1950's, storm water falling upon the land now owned by Corrado and Gianni and their predecessors in interest flowed over the respective lands of the parties within the watershed in a diffused state, evaporated and percolated into the soil before emptying onto the lands of Deibert and Borowski and their predecessors in interest, and such constituted a "natural flow" of storm water.

17. In the mid 1950's, Turnpike constructed the Northeast Extension of the Pennsylvania Turnpike, and made topographic changes and installed the road surface, and its environs, and installed artificial facilities, including a concrete conduit having a diameter of approximately forty-eight (48) inches (sometimes hereinafter referred to as a "culvert" or "pipe"), which now collects surface water within the watershed that includes the lands owned by all of the parties and all surface water is now channeled onto lands owned by Deibert and Borowski. The size of the concrete conduit is such that the pipes have a capacity to channel greater volumes of storm water at greater rates of flow onto the lands of Deibert and Borowski.

18. Prior to the Corrado Homes and Hidden Valley Meadows Developments being created, the development now known as the Hidden Valley Meadows Development contained large "closed depressions" which allowed for a natural dissipation of surface water. Prior to development of the Hidden Valley Meadow and Corrado Homes Developments, the "off site" storm water flowed to the closed depression located on lands of Hidden Valley Meadow and Corrado Homes. A "closed depression" is an area which is low-lying and has no surface water outlet

therefore retaining storm water that flows into it.

19. Prior to the development of Hidden Valley Meadow and Corrado Homes, 15.11 acres of land within the watershed occupied by those developments drained onto the lands of Deibert and Borowski.

20. Prior to the development of Hidden Valley Meadow and Corrado Homes, there was an eighteen (18) inch pipe under Minesite Road having a barrel capacity of 15.7 cubic feet per second (cfs).

21. In mid and late 2005, LMT obtained a highway occupancy permit from the Pennsylvania Department of Transportation ("PennDOT") and installed pipes under a PennDOT road known as Minesite Road which channels surface water from beyond the Corrado Homes and Hidden Valley Meadows Developments, and then through the storm water management system and onto land owned by Turnpike, and then onto lands owned by Deibert and Borowski.

22. After the Corrado Homes and Hidden Valley Meadows Developments were installed, the new pipe under Minesite Road is twenty-four (24) inches, and has a barrel capacity of 33.0 cfs. This results in a doubling of the capacity of the pipe under Minesite Road which transports "off site" surface water to the Hidden Valley Meadow and Corrado Homes storm water management facilities, to the Pa. Turnpike forty-eight (48) inch concrete culvert, and then onto lands of Deibert and Borowski.

23. After the Corrado Homes and Hidden Valley Meadows Developments were installed, Gianni and Corrado, with the approval of LMT, eliminated the

drainage to the closed depression which has altered the natural flow, and increased the volume of water directed onto land owned by Deibert and Borowski. The surface water that was originally allowed to collect and seep into the closed depressions is now artificially channeled into storm sewers and, as diverted by the berm herein identified, the volume of surface water directed onto the lands of Deibert and Borowski has been increased by one hundred seventy percent (170 percent).

24. After the Corrado Homes and Hidden Valley Meadows Developments were installed, an additional 32.7244 acres of land drained to the lands of Deibert and Borowski, which increased the land area from which storm water was flowing to Deibert and Borowski by 300 percent.

25. The area of land that gives rise to the flow of storm water by the Corrado Homes and Hidden Valley Meadows Developments within the watershed is now approximately 45 acres.

26. Storm events are categorized based on how often a similar rain event will recur.

27. For a two (2) year storm, this has increased the volume (using the rational method) by 72,823 cubic feet (or 1.6272 acre feet) which amounts to a two hundred fifty (250%) percent increase. The increase in a normal development for a two (2) year storm is expected to be in the neighborhood of seventeen (17%) percent, or 7,519 cubic feet (or 0.173 acre feet).

28. After the Corrado Homes and Hidden Valley Meadows Developments were installed, the increase in

volume of water discharged onto the lands of Deibert and Borowski (using the SCS Runoff – Curve Method) for 2, 10, 25 and 100 year storms has substantially increased. For a two (2) year storm, the increase in volume is 79,816 cubic feet; for a ten (10) year storm, the increase in volume is 168,517 cubic feet; for a twenty-five (25) year storm, the increase is 235,215 cubic feet; and for a hundred (100) year storm, the increase is 387,290 cubic feet of water. The increases in volume are in the neighborhood of two hundred fifty (250%) percent even though seventeen (17%) percent is the norm.

29. The post development volume associated with a 10-year storm (5.99 acre feet) is now the equivalent of a 100 year storm (5.56 acre feet) pre-developments. So, whereas, pre-development, the volume was such that it would return every 100 years on average, now that same volume will return every 10 years on average.

30. The storm water management facilities, as designed, approved and installed, contain a "diversion berm" disguised as a "planting buffer" adjacent to Minesite Road (SR2015) which causes surface water to be interrupted from its natural flow, and diverted into the pipes, inlets, basins, streets and detention pond of the Corrado Homes and Hidden Valley Meadows Developments, which eliminates natural percolation and dissipation into the soil, and causes a substantial increase in the volume of water and rate of flow of surface water onto land owned by Deibert and Borowski.

31. The storm water management facilities, as designed, approved and installed as part of the subdivision and land development process is defective, and violates applicable

ordinances, regulations and statutes and liability arises to Deibert and Borowski for acts and/or omissions related thereto.

32. The storm water management facilities, as designed, approved and installed at the Corrado Homes and Hidden Valley Meadows Developments substantially increase the volume and rate of flow of storm water onto the lands of Deibert and Borowski which has caused significant injury and which continues to the present day.

33. Corrado made no downstream analysis. There are no public storm sewers or other storm water conveyance facilities on the lands of Deibert and Borowski.

34. The storm water management facilities, as designed, approved and installed, are not adequate to reasonably manage substantial increases in volume of surface water created by the Corrado Homes and Hidden Valley Meadows Developments.

35. The storm water management facilities, as designed, approved and installed, have failed.

36. Even though design standards under SALDO call for the management of rain storms predicated on one hundred (100) year and greater storms, the storm water management facility installed by Gianni Homes and Corrado Homes and approved and accepted for public dedication by Lower Macungie fails in minor rain storm events.

37. The storm water management system, as designed, approved and installed, at the Hidden Valley Meadows and Corrado Homes Developments substantially increases the volume of storm water onto the lands of Deibert

and Borowski, which has caused significant injury and continues to the present day.

38. At various times, the region in which the subject properties are located experienced rainfall events, and as a result of the storm water management system, as designed, approved and installed, the volume of surface water caused a deluge of water onto land owned by Deibert and Borowski that caused a stream to form on their land, creating a serious safety hazard to persons, and causing substantial injury and damage to the lands of Deibert and Borowski.

39. Given the underlying soil on the lands of Deibert and Borowski, classified as Washington silt loam, the increased volume of water from the Corrado Homes and Hidden Valley Meadows Developments created by the storm water management plan, as designed, approved and installed, channeled through the Pennsylvania Turnpike Commission pipe and has created surface water conditions that will promote the formation of sink holes on lands of Deibert and Borowski.

40. As a result of the continuous flow of storm water onto the land of Deibert, three (3) sinkholes have formed.

41. As a result of the deluge of surface water occasioned by the storm water management facilities, as designed, approved and installed, the lands of Deibert and Borowski have been rendered unsafe to pedestrian and vehicular travel during periods of significant rainfall.

42. The storm water management facilities, as designed, approved and installed, have created an emergency and, in the opinion of this court, the circumstances of this case

require immediate abatement.

43. The storm water management facilities, as designed, approved and installed as part of the subdivision process, are defective, and violate applicable ordinances, regulations and statutes and liability arises to Deibert and Borowski for acts and/or omissions related thereto.

44. The legislative scheme of the Storm Water Management Act, 32 P.S. § 680.1, et seq. ("SWMA") requires that each county in the Commonwealth prepare and adopt a watershed storm water management plan for each watershed in the county. 32 P.S. § 680.5.

45. The watershed storm water management plan applicable to the subject property is the Act 167 - Little Lehigh Creek Watershed Plan ("Act 167").

Act 167 defines the duties of Gianni and Corrado, as developers of land, as follows:

"Section 108. DUTY OF PERSONS ENGAGED IN THE DEVELOPMENT OF LAND

Notwithstanding any provisions of this ordinance, including waiver provisions, any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required to manage the rate, volume and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury."

46. The storm water management facilities, as designed, approved and installed, fail to meet the following design standards contained in Act 167:

"Section 301. GENERAL REQUIREMENTS

B. The existing points of concentrated drainage discharge onto adjacent property shall not be altered without written approval of the affected property owner(s).

C. ...If diffused flow is proposed to be concentrated and discharged onto adjacent property, the developer must document that there are adequate downstream conveyance facilities to safely transport the concentrated discharge or otherwise prove that no harm will result from the concentrated discharge....

...
.:

G. Storm drainage facilities and appurtenances shall be so designed and provided as to minimize erosion in watercourse channels and at all points of discharge.

...

H. Consideration should be given to the design and use of volume controls for storm water management, where geology and soils permit. Areas of suitable geology for volume controls shall be determined by the municipality. Documentation of the suitability of the soil for volume controls shall be provided by the applicant. Volume controls shall be acceptable in areas of suitable geology where the soils are designated as well-drained in the County Soil Survey. Other soils may

be acceptable for use of volume controls based on site-specific soils evaluations provided by the applicant."

47. The foregoing standards are designed to avoid harm to adjoining landowners given the "statement of findings," and "purpose" contained in Act 167 and its mandated model ordinance.

48. Section 103 speaks to the authority of the municipality, as follows:

"SECTION 103. STATUTORY AUTHORITY

The municipality is empowered to regulate these activities by the authority of the Act of October 4, 1978, P.L. 864 (Act 167), 32 P.S. Section 680, et. seq., as amended, the 'Storm Water Management Act' and the (appropriate municipal code)."

49. The obligations of the municipality, and its engineer, are documented in Section 405, entitled "Drainage Plan Review," which states as follows:

"SECTION 405. DRAINAGE PLAN REVIEW

A. The municipal engineer shall review the Drainage Plan for consistency with the adopted Little Lehigh Creek Watershed Storm Water Management Plan as embodied by this ordinance and against any additional storm drainage provisions contained in the municipal subdivision and land development or zoning ordinance, as applicable.

B. The municipality shall not approve any subdivision or land development (Regulated Activities 104.A and 104.B) or building permit application (Regulated

Activities 104.C and 104.C) if the Drainage Plan has been found to be inconsistent with the Storm Water Management Plan as determined by the municipal engineer."

50. The SWMA requires that once a watershed storm water plan is adopted and approved, that "each municipality shall adopt or amend, and shall implement such ordinances and regulations ... as are necessary to regulate development within the municipality in a manner consistent with the applicable watershed storm water plan and the provisions of this act." 32 P.S. §680.11.

51. The SALDO contains a storm water management ordinance pursuant to the mandates of the SWMA and Act 167.

52. The design and installation of the storm water management facilities fail to meet the following SALDO design standards:

Section 771.6 - Prevent overloading of downstream drainage systems and water courses as a result of increased rate of runoff caused by the proposed development;

Section 772.2 - The existing points of natural drainage discharge and the mode of drainage discharge and the mode of drainage conduct onto adjacent property shall not be altered, unless 772.2.1 written consent of affected landowner is obtained by the applicant with agreement filed on record plan;

Section 772.3 - No storm water runoff or natural drainage shall be so diverted as to overload existing drainage

systems, or create flooding or the need for additional drainage structures on other private properties or public lands;

Section 774.3.1 - Detention ponds shall be designed so that they return to normal conditions within approximately twelve (12) hours after the termination of the storm, unless the township engineer finds that downstream conditions may warrant other design criteria for storm water release;

Section 774.3.1 - "The developer shall verify that the operation of the detention facilities will not aggravate potential downstream peaking conditions."

Section 774.3.2 - The developer shall demonstrate that such ponds are designed, protected and located to assure that public safety is maximized and health problems are prevented;

Section 774.3.3 - The developer shall verify that the operation of the detention facilities will not aggravate potential downstream peaking conditions;

Section 774.3.4 - Emergency overflow facilities shall be provided for detention facilities to handle runoff in excess of design flows.

Section 791.1.2 - Measures used to control erosion and reduce sedimentation shall meet the standards and specifications of the Lehigh County Conservation District as set forth in the County Erosion and Sediment Control Handbook. The township engineer, or other officials as designated, shall ensure compliance with the appropriate specifications, copies of which are

available from the district.

Section 791.3.1.8 - "Grading will not be done in such a way as to divert water onto the property of other landowners without the written consent of the landowners."

53. The SALDO requires a storm to return to normal conditions, i.e. "dewatering," within twelve (12) hours after a storm ends. The storm water management facilities, as designed, approved and installed, do not result in a "dewatering" in twelve (12) hours. The "dewatering" times range from 24.85 hours to 34.30 hours, so Deibert and Borowski continue to receive storm water beyond the time permitted by the SALDO.

54. The storm water facilities, as designed, approved and installed, violate the Storm Water Management Act, 32 P.S. § 680.1, et seq. ("SWMA") by virtue of the facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

55. As a result of the aforesaid, the volume and rate of storm water flow has increased substantially within the Watershed, and all of the additional volume and rate of flow are directed to land owned by Deibert and Borowski.

56. The surface water flowing within the Pennsylvania Turnpike concrete conduits did not until recent times cause damage to land of Deibert and Borowski.

57. The storm water management facilities, as designed, approved and installed, were not properly designed or installed to protect the downstream property of Deibert and Borowski.

58. The elements that were omitted are, in part, as follows: the emergency spillway and the top or the grate is not as designed; the top of the berm is not high enough over the emergency spillway (1 foot versus 2 feet 8 inches); the spillway lacks R-4 riprap depth of 18 inches (netting instead was used); and there is one skimmer present (the approved designed requires 2 skimmer devices).

59. The surface water problems have been created as a result of excessive volumes and rate of flow of surface water from the land owned by the Corrado Homes and Hidden Valley Meadows Developments and other parts of Lower Macungie and the unreasonable attempt by the defendants to discharge the same onto Deibert and Borowski land.

60. The court finds the testimony of Chris Kerkusz, Robert Doll, Adrianne Doll, Richard Lands, Donald Dries, Michael Borowski, Louis F. Vittorio, Jr., Grayson McNair and William F. Deibert credible.

61. The court finds the testimony of William Erdman of low credibility due to the manner and content of his testimony. He repeatedly talked around questions, was somewhat defensive and continually qualified his answers when on cross-examination.

62. Remediation of the harm caused to the plaintiffs as a result of the storm water flowing onto their properties as described in the accompanying amended opinion is possible, namely, by installing a storm water drainage system that would begin at a point at the westerly edge of the Pennsylvania Turnpike Commission right of way and easterly edge of the property owned by the plaintiffs, William F. Deibert and Alma Deibert, husband and wife,

("Deibert Property") immediately adjacent to the existing southernmost pipe that runs east to west underneath the Northeast Extension of the Pennsylvania Turnpike, would then proceed in a southerly direction along the Deibert Property to the southeastern corner of the Deibert Property, would then proceed along East Texas Boulevard in a westerly direction to a point on the property owned by the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, adjacent to the easterly border of property owned by Richard Lane ("Lane Property"), would then cross under East Texas Boulevard and proceed in a southerly direction along the eastern boundary of the Lane Property to the southeast corner of the Lane Property, would then proceed in a westerly direction along the southern boundary of the Lane Property and would finally connect directly to the existing detention pond of the existing Hidden Valley Development.

63. The cost of the remediation described above is $371,325.25 together with the reasonable costs for all engineering plans, purchases of easements and costs for municipal approvals, bonds, inspections and permits, relocation of existing utilities and/or poles, tree replacement, sinkhole remediation, soil and/or compaction tests and changes due to unsuitable soils, frost excavation, erosion control, pumping related to subsurface water conditions and/or prevailing wages and material prices.

### III. FINDINGS AND DISCUSSION AS TO THE COUNTS SET FORTH IN PLAINTIFFS' AMENDED COMPLAINT

The court will address all the counts set forth in

plaintiffs' amended complaint in such a way that counts asserted in equity will follow counts asserted in law. Additionally, parallel counts will be addressed together.

COUNT II – TRESPASS – LAW

*Deibert v. Pennsylvania Turnpike Commission*

COUNT XIX – TRESPASS – LAW

*Borowski v. Pennsylvania Turnpike Commission*

On or about April 17, 1959, Iva Deibert (plaintiff William F. Deibert's mother) and plaintiff William F. Deibert settled and conveyed the condemned portion of their property located on East Texas Road ("Deibert Property") by deed to Turnpike.

As part of the settlement, the Deiberts received $8,000.00 and executed a release on behalf of Turnpike which included, but was not limited to, Turnpike's right to discharge storm water onto the Deibert Property. Said release was filed with said deed and states in relevant part that the Deiberts "do remise, release, quitclaim, and forever discharge the Pennsylvania Turnpike Commission, ..., of and from any and all actions, rights of action, suits, demands, claims and damages of every type and character whatsoever which in law of equity we ever had, now have or may hereafter have for or on account of the right to damages heretofore accruing to" the Deiberts.

In addition, within the deed, the Deiberts made the following representation: "grantors release, quitclaim and forever discharge the grantee, ... from any and all ...claims and damages...by reason of construction, operation and maintenance of the Turnpike through or upon the land

herein conveyed and any incidental or consequential damage to any remaining portion of the lands."

Therefore, based on the deed and release, Turnpike had the legal authority to discharge storm water from its property, and in the manner in which it has done so, since 1959.

No one contacted Turnpike regarding the Corrado Homes Subdivision's storm water management during its planning, approval process or construction. No special site development considerations were given by Corrado and Gianni to the downstream landowners, Turnpike and the plaintiffs.

Turnpike did not give Corrado or Gianni approval or consent to change the natural course of storm water drainage onto Turnpike's property, approval or consent to collect storm water on its property and direct the discharge of same directly at Turnpike's forty-eight (48) inch pipe or to triple the volume of storm water discharged onto its property.

From the date the Northeast Extension of the Pennsylvania Turnpike was originally constructed to the present date, Turnpike has taken no action through maintenance or additional construction to increase the storm water runoff from its roadway or adjoining properties near the Deibert Property.

Therefore, the court finds in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count II and in favor of the defendant, Pennsylvania Turnpike Commission, and against the

plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Count XIX.

COUNT III - NEGLIGENCE – LAW

*Deibert v. Pennsylvania Turnpike Commission*

COUNT XX - NEGLIGENCE – LAW

*Borowski v. Pennsylvania Turnpike Commission*

Based on the court's findings as to counts II and XIX, above, the court finds that Turnpike is not liable under a negligence theory.

Therefore, the court finds in favor of the defendant, Pennsylvania Turnpike Commission, and against the Plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count III and in favor of the defendant, Pennsylvania Turnpike Commission, and against the Plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XIX.

COUNT I – INJUNCTIVE RELIEF – EQUITY

*Deibert v. Pennsylvania Turnpike Commission*

COUNT XVIII – INJUNCTIVE RELIEF – EQUITY

*Borowski v. Pennsylvania Turnpike Commission*

Based on the court's findings as to counts II and XIX above, the court finds that Turnpike is not liable to provide injunctive relief to the plaintiffs under an equity theory.

Therefore, the court finds in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count I and in favor of the defendant,

Pennsylvania Turnpike Commission, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XVIII.

COUNT V – TRESPASS – LAW

*Deibert v. Gianni Homes*

COUNT XXII – TRESPASS – LAW

*Borowski v. Gianni Homes*

The Corrado Homes Subdivision was comprised of two (2) developments: the Hidden Valley Meadows Development and the Corrado Homes Development. Gianni developed the Hidden Valley Meadows Development of the Corrado Homes Subdivision pursuant to the plans submitted by Corrado and approved by LMT. As stated above, deeds of dedication were accepted by LMT on March 15, 2005.

"In Pennsylvania, an upstream landowner is liable to a downstream landowner where the upstream landowner diverts water from its natural channel or where it unreasonably or unnecessarily changes in quantity or quality the water runoff such that the downstream owner has been injured." *Leiper v. Heywood-Hall Construction Co.*, 381 Pa. 317, 320, 113 A.2d 148 (1955).

While Gianni constructed the Hidden Valley Meadows Development pursuant to the defective plans designed by Corrado and approved by LMT, at some point in time, it sold said land to individual property owners. The exact time frame is unclear. As there is no evidence to establish exactly when the ownership of the land transferred to these individuals, the court would have to speculate in order

to reach the conclusion that Gianni owned the land for some period of time when the storm water management facilities were installed and caused harm to the plaintiffs. The court is unable to conclude that Gianni still owned the Hidden Valley Meadows land when damage to the plaintiffs occurred as a result of the storm water management facilities. Therefore, while Gianni owned the land at the time it installed the storm water management facilities, the court will not hold Gianni liable for trespass on a presumption, without any evidence of ownership of the land in question at the time the damage occurred. Additionally, as stated above, Gianni is not the owner of the storm water management facilities, as they were dedicated to, and accepted by, LMT. Therefore, the ownership required for a trespass cause of action has not been established as to Gianni.

Therefore, the court finds in favor of the defendant, PA Gianni Homes, Inc., and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count V and in favor of the defendant, PA Gianni Homes, Inc., and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XXII.

COUNT VI – NEGLIGENCE – LAW

*Deibert v. Gianni Homes*

COUNT XXIII – NEGLIGENCE – LAW

*Borowski v. Gianni*

As stated above, the Corrado Homes Subdivision was comprised of two (2) developments: the Hidden Valley Meadows Development and the Corrado Homes Development. Gianni constructed the Hidden Valley

Meadows Development and installed the storm water management facilities of the Corrado Homes Subdivision pursuant to the plan designed by Corrado and approved by LMT.

While it did not design the storm water management facilities, Gianni is the developer who installed them, is a "person engaged in the alteration or development of land which may affect storm water runoff characteristics" and, therefore, has a duty to conform to the SWMA's mandates. See 32 P.S. § 680.13. Specifically, it was Gianni's duty to install storm water management facilities "to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury" consistent with Act 167 and the SALDO. See SWMA, § 13. Gianni failed to do so. Therefore, Gianni's failure to comply with the directives of Act 167 and the SALDO effectively violated the mandates and purpose of the SWMA.

The court finds that Gianni violated the mandates and purpose of the SWMA by installing the storm water management facilities that violate Act 167 and SALDO requirements. The court notes that the plaintiffs do not have a statutory cause of action under the SWMA, but a negligence theory premised on the defendants' alleged violation of the SWMA, Act 167 and SALDO. Therefore, the inquiry does not end with the question of whether Gianni violated the SWMA, Act 167 and SALDO, but the court must ask whether such violation supports a cause of action for negligence.

A person who has violated a statute designed to prevent a certain type of dangerous situation is negligent with

respect to harm caused by its violation only where the harm was sustained by reason of a situation of the type intended to be avoided. A violation of the statute does not constitute a ground for imposing liability unless it is shown to be a substantial factor in causing the injury. 3 Summ. Pa. Jur. 2d Torts § 27:3.

As stated above, the policy and purpose of the SWMA is to:

(1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.

(2) Authorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.

(3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment. 32 P.S. § 680.3.

It is clear to the court, based on the facts enumerated above, that Gianni violated the purpose of the SWMA when it installed the storm water maintenance facilities that so clearly violated the SWMA, Act 167 and the SALDO. The court finds that said violation of the SWMA's purpose, as

well as the violation of the specific regulations enacted in furtherance of said purpose, namely Act 167 and the SALDO, were substantial factors in causing the injury alleged in this case. Gianni is liable under a negligence theory for its negligent violation of the SWMA by installing the subject storm water management facilities.

Therefore, the court finds in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the Defendant, PA Gianni Homes, Inc., on count VI and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, PA Gianni Homes, Inc., on Count XXIII.

COUNT IV – INJUNCTIVE RELIEF – EQUITY

*Deibert v. Gianni Homes*

COUNT XXI – INJUNCTIVE RELIEF – EQUITY

*Borowski v. Gianni Homes·*

Because there is an adequate remedy at law, the plaintiff's request for injunctive relief as against Gianni is denied.

Therefore, the court finds in favor of the defendant, P.A. Gianni Homes, Inc., on and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, count IV and in favor of defendant, PA Gianni Homes, Inc., and against plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XXI.

COUNTS VIII/XI – TRESPASS – LAW

*Deibert v. Corrado Homes/Minesite Road*

COUNT XXV/XVIII – TRESPASS – LAW

*Borowski v. Corrado Homes/Minesite Road*

As stated above, Corrado owned the land at the time that it designed the Corrado Homes Subdivision plan that proposed to alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of the plaintiffs. See *Rau v. Wilden*, 103 A.2d 422 (Pa. 1954). However, on March 9, 2005, LMT accepted dedication of the storm water management facilities that ultimately resulted in the harm.

While Corrado constructed the Corrado Homes Development pursuant to the defective plans approved by LMT, at some point in time, it sold said land to individual property owners. The exact time frame is unclear. As there is no evidence to establish exactly when the ownership of the land transferred to these individuals, the court would have to speculate in order to reach the conclusion that Corrado owned the land for some period of time when the storm water management facilities were installed and caused harm to the plaintiffs. The court is unable to conclude that Corrado still owned the Corrado Homes land when damage to the plaintiffs occurred as a result of the storm water management facilities. Therefore, while Corrado owned the land at the time the storm water management facilities were installed, the court will not hold Corrado liable for trespass on a presumption, without any evidence of ownership of the land in question at the time the damage occurred. Additionally, as stated above, Corrado is not the owner of the storm water management facilities, as they were dedicated to, and accepted by, LMT. Therefore, the ownership required for a trespass cause of action has not been established as to Corrado.

The court finds that Corrado is not liable to the plaintiffs on the theory of trespass.

Therefore, the court finds in favor of defendant, Corrado Homes, Inc., and against plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count VIII and in favor of defendant, Corrado Homes, Inc., and against plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XXV and in favor of defendants, Minesite Road, L.P. and Minesite LLC, and against plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count XI and in favor of defendants, Minesite Road, L.P. and Minesite LLC, and against plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XVIII.

COUNT IX/XII – NEGLIGENCE – LAW

*Deibert v. Corrado Homes/Minesite Road*

COUNT XXVI/XXIX – NEGLIGENCE – LAW

*Borowski v. Corrado Homes/Minesite Road*

As stated above, the court finds that the storm water management facilities, as designed, approved and installed in this matter, violate the SWMA by virtue of the facilities' violation of Act 167 and the SALDO. Although Corrado did not physically install the storm water management facilities, Corrado is the developer that designed the defective facilities as part of its Corrado Homes Subdivision plan. From the outset, it was Corrado's duty to a design a plan "to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury" consistent with Act 167 and the SALDO. See

SWMA, §13. Corrado failed to do so. Therefore, Corrado's failure to comply with the directives of Act 167 and the SALDO effectively violated the mandates and purpose of the SWMA.

The court notes that the plaintiffs do not have a statutory cause of action under the SALDO, but rather a negligence theory premised on the defendants' alleged violation of the SWMA, Act 167 and SALDO. Therefore, as in the negligence claim against Gianni, the inquiry does not end with the question of whether Corrado violated the SWMA, Act 167 and SALDO, but the court must ask whether such violation supports a cause of action for negligence.

A person who has violated a statute designed to prevent a certain type of dangerous situation is negligent with respect to harm caused by its violation only where the harm was sustained by reason of a situation of the type intended to be avoided. A violation of the statute does not constitute a ground for imposing liability unless it is shown to be a substantial factor in causing the injury. 3 Summ. Pa. Jur. 2d Torts § 27:3.

The stated policy and purpose of the SWMA, as stated above, is to:

(1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.

(2) Authorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current

and cross-section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.

(3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment. 32 P.S. § 680.3.

It is clear to the court, based on the facts enumerated above, that Corrado's violation of the purpose of the SWMA, as well as the specific regulations enacted in furtherance of said purpose, namely Act 167 and the SALDO, were substantial factors in causing the injury alleged in this case. Therefore, Corrado is liable under a negligence theory for its negligent violation of the SWMA by designing and submitting the clearly deficient storm water management facilities plan to LMT.

Additionally, the court notes that Corrado obtained all necessary permits and approvals for the Corrado Homes Subdivision plan, specifically the storm water management facilities.

The August 26, 2003 application for an individual National Pollutant Discharge Elimination System ("NPDES") Permit for storm water discharge associated with construction activities was submitted by Corrado containing inaccurate information on storm water runoff volumes. The application shows an increase in volume of. 273 acre feet, or an approximate 17 percent increase in runoff volume. According to the storm water management plan submitted by Corrado and approved by LMT, the total

volume generated by a two (2) year storm is 2.508 acre feet for an increase in volume of one hundred seventy percent (170 percent), not seventeen percent (17 percent).

The court finds that Corrado was negligent in submitting an NPDES application that contained false and misleading information.

The court finds that Corrado is liable under a negligence theory for (1) the design and submission of the storm water management facility that violates the SWMA, Act 167 and the SALDO and (2) submitting the NPDES application that contained false and misleading information.

Therefore, the court finds in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Corrado Homes Inc., on count IX and in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendants, Minesite Road, L.P. and Minesite Road LLC, on count XII and in favor of plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, Corrado Homes Inc., on count XXVI and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendants, Minesite Road, L.P. and Minesite Road LLC, on Count XXIX

COUNTS VII/X – EQUITY – INJUNCTIVE RELIEF

*Deibert v. Corrado Homes/Minesite Road*

COUNTS XXIV/XXVII – EQUITY – INJUNCTIVE RELIEF

*Deibert v. Corrado Homes*

Because there is an adequate remedy at law, the

plaintiff's request for injunctive relief as against Corrado is denied.

Therefore, the court finds in favor of the defendant, Corrado Homes Inc., and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count VII and in favor of the defendants, Minesite Road, L.P. and Minesite Road LLC, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count X and in favor of defendant, Corrado Homes Inc., and against plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, the on count XXIV and in favor of the defendants, Minesite Road, L.P. and Minesite Road LLC, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XXVII

COUNT XIV – TRESPASS – LAW

*Deibert v. Lower Macungie Township*

COUNT XXXI – TRESPASS – LAW

*Borowski v. Lower Macungie Township*

Dedication does not vest a fee simple title in a municipality. In general terms, when property is dedicated, the public obtains an easement. The fee continues to be in the owner of the land, notwithstanding the public's right to use the dedicated property. See *Versailles Tp. Authority of Allesheny County v. City of McKeesvort*, 171 Pa. Super. 377, 90 A.2d 581 (1952). However, the acceptance of a deed of dedication renders a municipality liable as a landowner. See *Stivala Investments, Inc. v. South Abinston Township Board of Supervisors*, 815 A.2d 1 (2003).

As stated above, the deeds of dedication all pertained to the storm water management facilities, including Basin No. 1, as well as the internal street system of the Corrado Homes and Hidden Valley Meadows Developments, which contain pipes, catch basins and conduits forming part of the storm water management system.

Evidence of a possessory right was shown by the deeds of dedication of the storm water management system and the streets that were executed on March 9, 2005 and the subdivision Improvement Agreements entered into by LMT and Corrado Homes, Minesite Road and Gianni Homes. The Subdivision Improvement Agreements required that all public improvements be dedicated to LMT before any zoning permits would be issued. Additionally, the principal of Gianni, Phillip Gianni, testified credibly that LMT has actively taken over maintenance responsibilities for the storm water management system.

The court also notes that LMT applied for a highway occupancy permit from the Pennsylvania Department of Transportation to permit the installation of two (2) pipes under Minesite Road, and it did so representing that the pipes were the property of LMT. The pipes under Minesite Road were instrumental in conveying water from beyond the Corrado Homes and Hidden Valley Meadows Developments and artificially channeling the water into the storm water management system, which emptied onto lands of Deibert and Borowski.

Therefore, based on the evidence presented at trial, and the relevant case law, it is clear to the court that LMT is the possessor and owner of the storm water management

facilities, as contemplated by the subdivision improvement agreements and the deeds of dedication.

"In Pennsylvania, an upstream landowner is liable to a downstream landowner where the upstream landowner diverts water from its natural channel or where it unreasonably or unnecessarily changes in quantity or quality the water runoff such that the downstream owner has been injured....The same rule applies to municipalities." *Leiper v. Heywood-Hall Construction Co.*, 381 Pa. 317, 320, 113 A.2d 148 (1955).

Based on the facts enumerated herein, it is clear to the court that the storm water management system has redirected the natural flow of water onto the property of the plaintiffs, thereby causing damage.

As such, LMT is liable in trespass for the damage caused by the storm water management system it possesses and maintains.

The Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541 states:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person. 42 Pa. C.S.A. §8541.

Section 8542 of the PSTCA provides an exception to § 8541 and states, in relevant part, that:

(a) Liability imposed. A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter

if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct. 42 Pa. C.S.A. § 8542(a).

Furthermore, Section 8542(b) of the PTSCA establishes specific circumstances in which liability may attach to a local agency. Section 8542(b) states, in relevant part:

b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

3) Real Property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks....

Section 8542(b), dealing with the real estate exception, constitutes an exception to municipal immunity for storm water damage caused by an inadequate storm water management facility. *Pastore v. Commonwealth of Pennsylvania State System of Higher Education for the Use of Edinboro University of Pennsylvania*, 152 Pa. Commw. 111, 618 A.2d 1118 (1992); see also *Staffaroni v. City of Scranton*, 153 Pa. Commw. 188, 620 A.2d 676 (1993). Additionally, in *Piekarski v. Club Overlook Estates, Inc.*, the Superior Court found that a municipal entity was liable for "unreasonably ... increasing the flow of water to a road ... where the storm water management system relating to a development was dedicated to the municipal entity." 281 Pa. Super. 162, 421 A.2d 1198(1980). The *Piekarski* court stated that:

Even a municipality, while not liable to a property owner for an increase flow of surface water over his land arising merely from changes in the character of the surface produced by the opening of streets and the building of houses in the ordinary and regular course of the expansion of the city, may not divert the water onto another's land through the medium of artificial channels." *Id.* (citing *Strauss v. Allentown*, 215 Pa.

96, 63 A. 1073 (1906)("there is no sound reason why the same rule should not apply to municipalities as to individuals")). *Id.*

As to the two-part analysis of § 8542(a), first, it is clear that, under the facts presented by this case, damages would be recoverable under a trespass theory if the injury were caused by a person not having a defense under § 8541. And second, the injury was caused by the negligent acts of LMT, namely the storm water management system it owns and possesses is causing water to unlawfully trespass onto the plaintiffs' property. As the real estate exception under §542(b)(3) of the PSTCA applies to LMT under the circumstances presented by this case, LMT is not immune from suit in this case on the plaintiffs' action in trespass.

The court finds that Lower Macungie Township is liable in trespass as the possessor and owner of the Storm Water Management Facilities that have created the plaintiffs' harm.

Therefore, the court finds in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Lower Macungie Township, on count XIV and in favor of plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against defendant, Lower Macungie Township, on count XXXI.

However, the court notes that Section IV of the Subdivision Improvement Agreements entered into between LMT and Corrado and LMT and Gianni contain an indemnification agreement as between the two (2) developers and LMT. Both agreements contain identical

language. The language reads:

> A. Developer hereby agrees to exonerate, indemnify and save harmless the Township, ... from any and all claims, actions, awards, verdicts, judgments, together with reasonable counsel fees based upon or arising out of the approval and all aspects of the design, construction or development of said subdivision and land development ... specifically including the design, construction and maintenance of storm water drainage facilities, for damages or injuries ... to person or properties caused by or sustained in connection with the design, construction and development of said subdivision and land development.

Clearly, the court's finding of LMT's liability in trespass arises out of LMT's approval of the Corrado Homes Subdivision plan. Had LMT not approved the plan, it would not have required the subsequent dedication of the storm water management facilities. Absent the dedication, LMT would not have been found liable in trespass. Based on the broad indemnification language contained in the Subdivision Improvement Agreements, it is clear to the court that Corrado and Gianni must indemnify LMT jointly and severally.

Therefore, the court finds that defendants, Corrado Homes, Inc., Minesite Road, L.P. and Minesite Road LLC, and the defendant, PA Gianni Homes, Inc., are jointly and severally liable for the indemnification of the defendant Lower Macungie Township for the court's verdict as to counts XIV and XXXI.

COUNT XV – NEGLIGENCE – LAW

*Deibert v. Lower Macungie Township*

## COUNT XXXII – NEGLIGENCE – LAW

*Borowski v. Lower Macungie Township*

Pursuant to the Municipalities Planning Code ("MPC"), any appeal opposing the approval of a subdivision plan must be filed within thirty (30) days of the entry of the approval. See 53 P.S. § 11002-A. "No person shall be allowed to file any proceeding with the board later than thirty (30) days after an application for development ... has been approved ... if such proceeding is designed to secure reversal or limit approval in any manner." 53 P.S. § 10914.1(a). It appears to the court that Deibert and Borowski's proper course of action to contest LMT's approval of the storm water management plan clearly was proscribed by the MPC. Therefore, because the MPC provides the mechanism to contest a plan's approval, Deibert and Borowski's claim for LMT's negligent approval of the storm water management plan under a theory that the plan violated the SWMA, Act 167 and the SALDO must be denied.

Even if the MPC did not proscribe the mechanism by which a plan approval may be challenged, and Deibert and Borowski's failure to follow the MPC mandates within thirty (30) days did not force the conclusion that the negligent approval claim against LMT must fail, the claim is unsuccessful because LMT met its duty under the SWMA and/or because LMT is immune from suit for its approval decision.

The legislative scheme of the SWMA requires that

each county in the Commonwealth prepare and adopt a watershed storm water management plan for each watershed in the county. 32 P.S. §680.5.

The SWMA requires that once a watershed storm water plan is adopted and approved, that "each municipality shall adopt or amend, and shall implement such ordinances and regulations ... as are necessary to regulate development within the municipality in a manner consistent with the applicable watershed storm water plan and the provisions of this act." 32 P.S. §680.11.

It is clear to the court that LMT has performed its duty under the SWMA. Even if LMT violated the SWMA in failing to properly "implement" its SALDO by approving the subject subdivision plan, and specifically the storm water management facilities, the court again notes that the plaintiffs' claim is grounded in negligence. There is no exception in the PSTCA for negligent approval of storm water management plans and therefore, LMT is immune from suit for any negligence cause of action brought under such a theory.

The court finds that Lower Macungie Township is not liable to the plaintiffs on their cause of action based on negligence.

Therefore, the court finds in favor of defendant, Lower Macungie Township, and against plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on count XV and in favor of defendant, Lower Macungie Township, and against Plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on count XXXII.

## COUNT XIII – INJUNCTIVE RELIEF – EQUITY

*Deibert v. Lower Macungie Township*

## COUNT XVI – MANDAMUS

*Deibert v. Lower Macungie Township*

## COUNT XXX – INJUNCTIVE RELIEF – EQUITY

*Borowski v. Lower Macungie Township*

## COUNT XXXIII – MANDAMUS – LAW

*Borowski v. Lower Macungie Township*

Because there is an adequate remedy at law, the plaintiff's request for injunctive relief as against LMT is denied.

Therefore, the court finds in favor of the defendant, Lower Macungie Township, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts XIII and XVI and in favor of defendant, Lower Macungie Township, and against plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XXX and XXXIII.

## IV. CONCLUSION

Damages are awarded to plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendants, Corrado Homes, Inc., Minesite Road, L.P. and Minesite Road LLC, PA Gianni Homes, Inc. and Lower Macungie Township, in the amount of $371,325.25 together with the reasonable costs for all engineering plans, purchases of easements and

costs for municipal approvals, bonds, inspections and permits, relocation of existing utilities and/or poles, tree replacement, sinkhole remediation, soil and/or compaction tests and changes due to unsuitable soils, frost excavation, erosion control, pumping related to subsurface water conditions and/or prevailing wages and material prices necessary to remediate the harm caused to the plaintiffs as a result of the storm water flowing onto their properties as described in the accompanying amended opinion by installing a storm water drainage system that would begin at a point at the westerly edge of the Pennsylvania Turnpike Commission right of way and easterly edge of the property owned by the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, ("Deibert Property") immediately adjacent to the existing southernmost pipe that runs east to west underneath the Northeast Extension of the Pennsylvania Turnpike, would then proceed in a southerly direction along the Deibert Property to the southeastern corner of the Deibert Property, would then proceed along East Texas Boulevard in a westerly direction to a point on the property owned by the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, adjacent to the easterly border of property owned by Richard Lane ("Lane Property"), would then cross under East Texas Boulevard and proceed in a southerly direction along the eastern boundary of the Lane Property to the southeast corner of the Lane Property, would then proceed in a westerly direction along the southern boundary of the Lane Property and would finally connect directly to the existing detention pond of the existing Hidden Valley

Development.

The defendants, Corrado Homes, Inc., Minesite Road, L.P. and Minesite Road LLC, and the defendant, PA Gianni Homes, Inc., are jointly and severally liable for the indemnification of the defendant Lower Macungie Township for the court's verdict as to counts XIV and XXXI.

## AMENDED ORDER

And now, October 22, 2010:

It is ordered that, based upon the findings set forth in the accompanying opinion, the order dated June 15, 2010 is amended and verdict is entered:

1. In favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts I, II and III and in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XVIII, XIX and XX;

2. In favor of the defendant, PA Gianni Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts IV and V and in favor of the defendant, PA Gianni Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XXI and XXII;

3. In favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife and against the defendant,

P.A. Gianni Homes, on count VI and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, PA Gianni Homes, on count XXIII;

4. In favor of defendant, Corrado Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts VII and VIII and in favor of defendant, Corrado Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XXIV and XXV;

5. In favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Corrado Homes, on count IX and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, Corrado Homes, on count XXVI;

6. In favor of the defendants, Minesite Road, L.P. and Minesite Road LLC, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts X and XI and in favor of the defendants, Minesite Road, L.P. and Minesite Road LLC, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XXVII and XXVIII;

7. In favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendants, Minesite Road, L.P. and Minesite Road LLC on count XII and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife,

and against the defendants, Minesite Road, L.P. and Minesite Road LLC, on Count XXIX;

8. In favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Lower Macungie Township, on count XIV and in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, Lower Macungie Township, on count XXXI;

9. In favor of the defendant, Lower Macungie Township, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on counts XIII, XV and XVI and in favor of the defendant, Lower Macungie Township, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on counts XXX, XXXII and XXXIII; and

It is further ordered that damages are awarded to the plaintiffs, as set forth in the amended order and amended opinion, William F. Deibert and Alma Deibert,husband and wife, and Michael P. Borowski and Pamela Borowski, husband and wife, and against defendants, Corrado Homes, Inc., Minesite Road, L.P. Minesite Road LLC, PA Gianni Homes, Inc. and Lower Macungie Township, in the amount of $371,325.25 together with the reasonable costs for all engineering plans, purchases of easements and costs for municipal approvals, bonds, inspections and permits, relocation of existing utilities and/or poles, tree replacement, sinkhole remediation, soil and/or compaction tests and changes due to unsuitable soils, frost excavation, erosion control, pumping related to subsurface water

conditions and/or prevailing wages and material prices necessary to remediate the harm caused to the plaintiffs as a result of the storm water flowing onto their properties as described in the accompanying amended opinion by installing a storm water drainage system that would begin at a point at the westerly edge of the Pennsylvania Turnpike Commission right of way and easterly edge of the property owned by the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, ("Deibert Property") immediately adjacent to the existing southernmost pipe that runs east to west underneath the Northeast Extension of the Pennsylvania Turnpike, would then proceed in a southerly direction along the Deibert Property to the southeastern corner of the Deibert Property, would then proceed along East Texas Boulevard in a westerly direction to a point on the property owned by the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, adjacent to the easterly border of property owned by Richard Lane ("Lane Property"), would then cross under East Texas Boulevard and proceed in a southerly direction along the eastern boundary of the Lane Property to the southeast corner of the Lane Property, would then proceed in a westerly direction along the southern boundary of the Lane Property and would finally connect directly to the existing detention pond of the existing Hidden Valley Development; and

It is further ordered that the defendants, Corrado Homes, Inc., Minesite Road, L.P. and Minesite Road LLC, and the defendant, PA Gianni Homes, Inc., are jointly and severally liable for the indemnification of the defendant Lower Macungie Township for the court's verdict as to counts XIV and XXXI.