J-A14026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES G. WAITE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CDG PROPERTIES, LLC. | |
| v. | |
| GRANDVIEW MANAGEMENT, INC. AND BURNHAM FARMS, LP. | |
| Appellants | |
| STONE VALLEY CONSTRUCTION, INC., AND COUNTRY COVE CONDOMINIUM ASSOCIATION | No. 1905 MDA 2015 |

Appeal from the Judgment Entered October 1, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2013-569

BEFORE: BOWES, OTT AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 18, 2017**

Grandview Management, Inc. ("Grandview") and Burnham Farms, LP ("Burnham") filed the present appeal after the trial court rendered a verdict against them and in favor of Appellee, James G. Waite. We affirm.

Mr. Waite owns a 3.02 acre tract of land containing woodland and his residence that is located at 296 Valentine Hill Road, Bellefonte. Mr. Waite's property is at the foot of a parcel of real estate that slopes down to his land and formerly consisted of a farm, meadowland, and a forest. In 2005, CDG

* Retired Senior Judge assigned to the Superior Court.

Properties, LLC ("CDG") purchased that adjacent property. CDG, with the assistance of Grandview and Burnham, constructed a residential development known as Burnham Farms Estate. As part of that project, a storm water management system was designed and installed. It consisted of a swale, conduits, pipes, and a drainage detention basin. Approximately three years after the construction of Burnham Farms Estate, Mr. Waite noticed that trees along his property line with the real estate containing the that residential development began to die. Mr. Waite's investigation revealed that the trees' deterioration was the result of increased subsurface water drainage onto his land caused by the storm water management system.

On February 13, 2013, Mr. Waite filed this action against CDG, and he then filed an amended complaint naming as defendants CDG, Grandview, Burnham, and Stone Valley Construction, Inc.[1] Mr. Waite averred that the defendants, as the developers and owners of Burnham Farms Estate, were liable for his property damage because the storm water management system caused an increase in the subsurface water flow onto his land.

---

[1] Country Cover Condominium Association, while a named defendant, was never separately served with the complaint.

The matter proceeded to a nonjury trial, where the trial court entered a directed verdict in favor of Stone Valley Construction Inc. and CDG.[2] After consideration of the evidence presented by Mr. Waite, the court awarded him $43,285.00 in damages against Grandview and Burnham. Damages were for the removal and replacement of the trees already affected by the increase in subsurface water flow. The court also directed Grandview and Burnham to "modify the storm, water drainage system so that water is conveyed to the storm water [drainage detention] basin as intended and no longer drains onto Plaintiff's property." Order of Court, 5/20/15, at 1.

This appeal followed the denial of Grandview and Burnham's post-trial motion. They present these issues on appeal:

A. Whether the lower court erred in accepting the testimony of the plaintiff's two liability experts and committed an abuse of discretion by regarding this testimony as being credible for purposes of finding a causal connection between the alleged harm and the appellants' conduct?

B. Whether the lower court erred in granting mandatory injunctive relief inasmuch as sufficient evidence was not presented to support this form of relief and where an adequate remedy at law is available?

C. The lower court erred in finding that Grandview Management, Inc., and Burnham Farms, L.P. were liable in this matter as the parties who were the permittees for purposes of the storm water management system.

---

[2] Grandview and Burnham appealed the grant of this directed verdict, which we affirmed. ***Waite v. CDG Properties, LLC.***, 2016 WL 5401842 (Pa. Super. filed August 15, 2016) (unpublished memorandum).

Appellants' brief at 3-4.

Initially, we observe that the following standard of review applies after a bench trial.

> When reviewing the verdict from a bench trial, we must review the evidence of record in the light most favorable to the verdict winner to determine whether competent evidence supports the trial court's findings and whether it erred in reaching its conclusions of law. *McEwing v. Lititz Mut. Ins. Co.,* 77 A.3d 639, 646 (Pa.Super. 2013). We afford the same weight to the trial court's findings of fact as we do a jury's verdict. *Id.* We will only reverse if the trial court's findings of fact are unsupported by competent evidence or if it erred as a matter of law. *Id.*

*Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 652 (Pa.Super. 2014).

The law regarding alteration of surface water is well-ensconced in this Commonwealth. In 1954, applying prior law on the subject, our High Court articulated the pertinent principle:

> A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. One may make improvements upon his own land, especially in the development of urban property, grade it and build upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property.

*Rau v. Wilden Acres, Inc.*, 103 A.2d 422, 423 (Pa. 1954); *accord St. Andrew's Evangelical Lutheran Church of Audubon v. Lower*

- 4 -

*Providence Twp.*, 198 A.2d 860 (Pa. 1964); *Ridgeway Court, Inc. v. Landon Courts, Inc.*, 442 A.2d 246 (Pa.Super. 1981). Subsurface waters are analogous to surface waters for purposes of this cause of action. *Miller v. C.P. Centers, Inc.*, 483 A.2d 912 (Pa.Super. 1984).

Herein, Mr. Waite presented the testimony of two expert witnesses, Eric Chase, a geologist and hydrologist, and Keith Lingenfelter, a horticulturalist and plant pathologist. Mr. Chase opined that the storm water drainage system did not function properly and had altered and increased the water flow underneath the surface of Mr. Waite's property. That expert testified that he visited the site, including both Mr. Waite's property and the development. He toured the swale and drainage basin, looked for sink holes, saw the dead or dying trees, and ascertained the soil thickness and the composition of the underlying rock by reviewing various United States Geological Surveys. *See* N.T. Trial, 1/26/15, at 109-115.

Based upon his review of the property, the surveys and his professional experience, Mr. Chase concluded:

> It's my professional opinion that the storm water swale is not functioning effectively, allowing the storm water to pond and infiltrate into the ground, up gradient of the subject property, which is Jim Waite's property. And that based on the local site conditions that I viewed while I was there, the proximity of the subject property to the swale, which is immediately adjacent to the swale, the shallow soils, the topography, the local ground water direction, that the storm water entering the swale is actually going through the swale into the soils and onto Jim Waite's property. **And this did not exist previously when it was a meadow and/or forested area**.

- 5 -

*Id*. at 115-116.

Based upon his observations, Mr. Chase stated that the storm water drainage system was designed to channel storm water flowing from the development's property into a swale and along that swale into a drainage detention basin. He reported that the swale was not operating properly. Specifically, due to the soil conditions and the slope of the rock under the drainage swale, a significant amount of the water entering the swale drained into the earth below the swale rather than along the swale and into the drainage detention basin, as it was supposed to do. The water seeping from the swale flowed down into Mr. Waite's property. Mr. Chase noted that, even after heavy rainfalls, the drainage detention basin was empty.

Mr. Chase's testimony was corroborated by Paul Dembowski, a senior civil engineer with the Department of Environmental Protection. Mr. Dembowski oversaw the construction and operation of the storm water management system, which was permitted by that Department. He visited the site several times and, during his first inspection, he observed water draining into the swale and being directly absorbed into the ground instead of flowing along the swale into the drainage detention basin. He also observed vegetation growth in the swale and the drainage detention basin and several large rocks located in the swale. Mr. Dembowski expressed concern that storm water runoff was not collecting in the drainage detention

basin, as indicated in the system's design, and he took several pictures, which were presented by Mr. Waite at trial.

This proof was thus sufficient to establish liability under the above-enunciated principles. The natural water flow from the property containing Burnham Farms Estate was altered by concentrating it into a man-made channel, the swale, but that swale caused more water to discharge in a concentrated manner onto the adjacent lower land owned by Mr. Waite. The property in question was not improved and developed with a resultant increase in flow of the surface water through a natural watercourse. Diffuse water was collected and placed in a conduit consisting of a defective swale. The swale was designed to carry storm water runoff from the development into the drainage detention basin, and it did not perform that function. Instead, the water in the swale seeped into the earth and down onto Mr. Waite's property.

Mr. Lingenfelter's opinion related to damages. He opined that tree death occurring on Mr. Waite's real estate was the result of the increase in subsurface water flow occasioned by the alteration of the property when Burnham Farms Estate was built. He stated that the roots of several of the trees that bordered the swale suffocated due to the excess water. Mr. Lingenfelter's opinion was based upon his personal examination, which eliminated insects and disease as the cause of the tree death. Mr. Lingenfelter articulated:

> And what I saw was mature canopy trees and young canopy tress exhibiting the very similar characteristics. You have one-third, one-half of the canopy die back. You have browning. You have mortality rates that are so high, they shouldn't be like this unless you're in an epidemic situation, like a major insect infestation. So touring the property, walking around, looking at adjacent property, and walking around the construction perimeter kind of when you get up the hill there where the developments occurred, I came to the conclusion that the insect and disease pressure in that area was not significant at all. Not only by the lack of symptoms I saw in any of the trees that I looked at, but by the general lack of infestation in walking around.

N.T. Trial, 1/26/15, at 37. That expert opined that the tree mortality was caused by an excess amount of water resulting from the improperly constructed storm water management system. *See id*. at 38-41.

In their first issue on appeal, Grandview and Burnham maintain that: "The expert witnesses simply did not present a credible and convincing basis upon which the verdict in favor of Mr. Waite was justified." Appellants' brief at 12. Grandview and Burnham suggest that the "experts' testimony should not have been accepted by the fact finder" because that proof was based upon speculation. *Id*. at 13 (relying upon *Collins v. Hand*, 246 A.2d 398 (Pa. 1968) (expert testimony cannot be based upon speculation or conjecture)).

In *Haan v. Wells*, 103 A.3d 60, 72–73 (2014), we repeated the oft-cited principle that "a fact-finder is permitted to accept all, part, or none of the testimony, and it is within the fact-finder's exclusive province to resolve conflicts in that testimony." Therein, we rejected a challenge to the trial

- 8 -

court's decision to accept testimony proffered by an expert witness. Further, this Court "will not reverse the trial court's credibility determinations absent an abuse of discretion." *In re Estate of Aiello*, 993 A.2d 283, 287 (Pa. Super. 2010).

Grandview and Burnham assail Mr. Chase's credulity because he did not proffer "scientific or technical analysis upon which to base his conclusions." Appellants' brief at 15. However, we conclude that Mr. Chase's opinion regarding the increase flow of water onto Mr. Waite's land had a firm factual basis and was not speculative. He testified that he viewed the property after rainstorms and looked at "what was happening with the swale" and that he knew the geology of the area. He concluded that no testing was necessary because his conclusions were supported by his view of the property and the geological surveys. *Id*. at 122. We reject Grandview and Burnham's position that Mr. Chase's testimony was speculative because it was firmly premised upon his expert knowledge and examination of the land, the storm water management system, and geological surveys.

As to Mr. Lingenfelter, Grandview and Burnham maintain that he was required to provide some scientific proof for his opinion and that he was not credible because there was a discrepancy between his first and second expert reports. Mr. Lingenfelter was a certified arborist consultant with an undergraduate degree from Colorado State University in Forestry Horticulture. He had worked for the United States Forestry Service and was

working in private industry when he testified herein. Mr. Lingenfelter had never operated as an expert witness before this lawsuit.

Mr. Lingenfelter's opinion as to the cause of tree death was based upon his observation of the affected trees and the lack of any other discernable cause for their death. He also relied upon Mr. Chase's proof that the storm water management system, due to the malfunctioning swale, altered the natural water flow and increased the amount seeping onto Mr. Waite's property. We therefore find that he had a sufficient forensic basis for his opinion.

The second aspect to Grandview and Burnham's challenge to Mr. Lingenfelter's credibility relates to the fact that he authored two reports and that there was an email exchange between their issuance. As noted, Mr. Lingenfelter had never been an expert witness, and his first report did not specifically mention the word water in it. Thereafter, Mr. Lingenfelter was reminded that liability for the tree mortality in this case hinged on the existence of excess water and that another one of his associates had mentioned the existence of excess water on Mr. Waite's land. Mr. Lingenfelter then issued a second report that was ultimately consistent with his trial testimony. Mr. Lingenfelter was subjected to vigorous cross-examination regarding the discrepancy between his first and second reports. He steadfastly maintained his opinion that water suffocation was the primary cause of the tree mortality on Mr. Waite's property below the swale.

The trial judge accepted both of Mr. Waite's experts as credible. Trial Court Opinion, 5/20/15, at 3-4. It was fully aware of the discrepancies between Mr. Lingenfelter's two reports. We find no abuse of discretion on the part of the trial judge in accepting Mr. Lingenfelter explanation and opinion. Accordingly, Grandview and Burnham are not entitled to relief on their first issue.

Appellants' second position is that the trial court erred in awarding injunctive relief. As noted, *supra*, they were ordered to rectify the storm water management system so that it no longer caused excess water to flow onto Mr. Waite's land and so that the water traveled into the drainage detention basin, as intended. Their challenges to the grant of injunctive relief are as follows 1) the injunction was inappropriate since Mr. Waite has an adequate remedy at law and any future harm to his trees can be remedied by an award of damages, Appellant's brief at 24, 27; 2) Mr. Waite did not demonstrate the clear right to relief required for the issuance of an injunction requiring an affirmative act on their part, Appellant's brief at 25; 3) the trial court's treatment of the grant of injunctive relief was cursory, Appellant's brief at 26; and 4) the testimony of Mr. Waite's expert witnesses was insufficient to establish that the factors necessary for the grant of injunctive relief were present, Appellants' brief at 26-27. We have already analyzed and addressed Grandview and Burnham's challenges to the

sufficiency of the testimony proffered by Mr. Chase and Mr. Lingenfelter. Thus, no further discussion of the fourth position is necessary.

There is a fatal flaw in Grandview and Burnham's first three complaints about the issuance of the injunction herein. They overlook the specific body of law applicable to the issuance of an injunction when a person is liable because he artificially channeled surface water onto the land of an adjacent property owner. We begin our analysis with the **Rau** decision, **supra**, where our Supreme Court upheld the trial court's finding that the defendant therein had artificially altered the course of his surface water and caused it to discharge more forcefully and in increased quantities on a portion of the land of a neighboring property owner. Based on these findings alone, the **Rau** Court ruled that the "plaintiff was entitled to the injunction which the court granted and which ordered defendant to cease and desist from collecting and concentrating the surface water on its land and discharging it in a body through ditches or artificial channels upon the plaintiff's farm." **Rau**, **supra** at 424.

In **St. Andrew's**, **supra**, our High Court more fully explored that nature of the tort in question as well as the availability of injunctive relief. Therein, a local township paved a road, raising it eight inches and causing flooding onto property owned by the Schracks. The township then installed a drainage pipe that concentrated and diverted the surface water from the Schrack property and another development and discharged it onto property

owned by the Austins. The water emanating from the pipe increased the surface water both on the Austins' property and property owned by a church. After the church and the Austins sued the township and the Schracks, the equity court characterized the channeling of the surface current as a nuisance and ordered the township to abate it.

The township specifically claimed on appeal that the plaintiffs were not entitled to injunctive relief since they had an adequate remedy at law. In summarily rejecting that position, our Supreme Court noted that the "trespass alleged would re-occur with each rainfall" and ruled "no citation of authority is required for the proposition that equity may restrain a continuing trespass." *St. Andrew's*, *supra* at 862. The *St. Andrew's* Court also characterized the artificial discharge of surface water as a nuisance, and it ruled that the "final decree directing the abatement of the flow on to the property of Austin and others was a just and equitable solution to the problem created by the township." *Id*.

This Court considered the issue in *Ridgeway Court*, *supra*. The defendant therein owned property adjacent to that of the plaintiff and which was higher in elevation. Before the defendant developed its property, the natural flow of water onto that of the plaintiff was diffuse and evenly distributed. Thereafter, the defendant altered the contour of its land, and "part of the surface water flow was diverted away from its natural course . .

- 13 -

. . and re-directed toward and across the northerly portion of [the plaintiff's] property," causing flooding. *Id*. at 247.

After concluding that the defendant was liable for damages caused by the increased water run-off onto the plaintiff's land under ***Rau***, ***supra***, this Court in ***Ridgeway Court*** rejected the defendant's position that the trial court was not authorized to enter an injunction ordering it to remedy the situation. The defendant claimed that the plaintiff was entitled only to the difference in the value of the property before and after the change in water flow. We ruled that, since the alteration of the water current was permanent in nature, the plaintiff was entitled to have the situation corrected.

More recently, in a case relied upon by Mr. Waite, ***Youst v. Keck's Food Service, Inc.***, 94 A.3d 1057 (Pa.Super. 2014), we applied the principles announced in the above-examined case law. Therein, a jury rendered a verdict that established the following. Keck's Food Service, Inc. ("Keck's") owned real estate adjacent to that of three members of the Youst family ("Yousts"). For one hundred years, Keck's' land contained a pond and dam fed by a creek, and the pond and creek were used as a water management system in that they captured water when the creek was overrun and stored the water for use during times that the creek was dry. Yousts' land, which was used as a farm, always had been served by the pond and dam through two drainage pipes, which provided a regular, controlled, and steady source of water.

- 14 -

Keck's replaced the pond and dam with a storm water management system that caused the creek to empty into one drainage pipe that led directly to the Yousts' land. These changes altered the water flow to such an extent that the Yousts' property either suffered from drought, when the creek was dry, or flooding, when the creek became overrun with rainwater. The inconsistent cycle of drought and flooding caused farm animals to die. The jury awarded the Yousts damages on trespass and nuisance claims raised in the Yousts' complaint, and the trial court awarded the Yousts a permanent injunction.

Against a challenge by Keck's, we upheld the jury's finding that it had committed a nuisance. This Court applied the above-delineated precept that "the right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, **in the natural ways and natural quantities**." *Id*. at 1073 (emphasis added; citation omitted). The *Youst* Court continued that, when the "the upper landowner alters the natural conditions so as to change the course of the water, or concentrates it at a particular point, or by artificial means increases its volume, he becomes liable for any injury caused thereby." *Id*. (citation omitted). We observed that there was sufficient proof to support that Keck's diverted the surface water from its natural course, channeled it unnaturally, and thereby caused a private nuisance on the Yousts' real estate.

This Court then rejected a challenge to the issuance of the permanent injunction wherein the trial court mandated that Keck's "abate the nuisance of the periodic flooding of the Yousts' property in a manner permitted by DEP regulations." *Id*. at 1079. The *Youst* Court concluded that, since the jury found that Keck's created a private nuisance on the Yousts' land, "Undoubtedly, [Keck's] must abate this nuisance; and, since the nuisance is continuing, the trial court possessed the authority to issue a permanent injunction and order Appellant to 'abate the nuisance.'" *Id*. (citing *Gardner v. Allegheny County*, 114 A.2d 491, 498 (Pa. 1955) ("it is hornbook law that a Court of Equity possesses jurisdiction to enjoin a nuisance")). Thus, the case law uniformly holds that, when a defendant artificially alters the natural flow of the surface water on his land so as to injure another property, it is a nuisance or continuing trespass that will be enjoined.

In the present case, the evidence supports the trial court's determination that Grandview and Burnham altered the natural flow of the rainwater from the property in question by channeling it into a storm water management system consisting of swales, conduits, pipes, and a drainage detention basin. The evidence submitted by Mr. Waite validated the court's conclusion that the system operated improperly and increased the amount of storm water flowing onto Mr. Waite's property. Thus, the system caused a nuisance and continuing trespass onto Mr. Waite's land. Accordingly, the trial court was within its power to issue the injunction in question by

ordering Grandview and Burnham to fix the swale so that the water in it went, as it was designed to do, into the drainage detention basin. Indeed, without the injunction, the nuisance/trespass will not abate and the phenomenon in question will continue to damage to Mr. Waite's property, resulting in litigation over the ensuing years. Accordingly, we affirm the trial court's issuance of an injunction.

Grandview and Burnham's final position is that they were not the permittees of the storm water management system and that Grandview Development Group, L.P. was the entity that owned the permit. Grandview and Burnham continue that Grandview Development Group, L.P., as permittee for the storm water management system, is the liable party herein. Appellants' brief at 28-29.

The argument in question is confusing and unsupported by citation to any legal authority. In its opinion, the trial court never mentioned an entity that owned the permit for the storm water management system. Instead, it premised its finding of liability upon the fact that Grandview and Burnham were involved in the development and construction of Burnham Farms Estate. Trial Court Opinion, 5/20/15, at 2. Grandview and Burnham do not refute this fact. Thus, they were not found liable based upon their status as the entities issued a permit by the Department of Environment Protection for the system in question. Indeed, Grandview and Burnham have failed to indicate where in the certified record the trial court based its verdict upon

identifying them as permittees. Thus, we find this undeveloped argument waived. ***Markovsky v. Crown Cork & Seal Co.***, 107 A.3d 749, 755 n.5 (Pa.Super. 2014) (failure to properly develop argument results in waiver).

Judgment affirmed.

Judge Platt joins the Memorandum.

Judge Ott Files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/18/2017