## Leiper, Appellant, v. Heywood-Hall Construction Company.

Argued January 3, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

F. C. Fiechter, Jr., with him *Freeman, Fox & Fiechter,* for appellants.

*Samuel H. High, Jr.,* with him *High, Swartz, Childs & Roberts,* for appellee.

OPINION BY MR. JUSTICE BELL, March 14, 1955:

Plaintiffs brought a bill in equity to enjoin defendant from collecting surface water into an artificial channel and increasing greatly the volume thereof so that it was precipitated in greatly increased quantities upon plaintiffs' land, causing substantial injury.

Defendant bought from the Houston Estate in 1950 56 acres of land, part of which adjoined plaintiffs' property. Defendant erected a residential development thereon, known as "Plymouth Meeting Village", consisting of 149 dwellings—four dwellings to an acre. Defendant installed no gutters, sewers, reservoirs or drains to carry off the surface waters. Each lot had its own cesspool or septic tank. The land had formerly been farm land.

Plaintiffs contend that defendant changed the contour of its land by creating an *artificial* low point at what is now the junction of Narcissa Road and Colony Lane, and (a) because of this *artificial* condition, sur-

face water from 12 acres which previously had drained toward the southeast now drains toward the northwest, and (b) because of defendant's grading of lots, the amount of surface water which otherwise would have passed to the southeast, was washed or gullied down across plaintiffs' land. Plaintiffs also contend that sewage was mingled with the surface water. The chancellor found that there was no credible evidence to support these contentions.

The chancellor also found that the equivalent of 37 lots or approximately 12 acres drain naturally toward plaintiffs, contrary to plaintiffs' contention; that a ditch or gully or channel approximately 10 feet wide and varying in depth from 1 to 2½ feet existed prior to 1950 as an intermittent drainage ditch through what is now the bed of Priscilla Road, for approximately 150 feet from what is now Colony Lane, to the line of plaintiffs' property; that Plymouth Meeting Village was developed pursuant to a plan prepared by a competent registered engineer, and the plan approved by the township authorities of Whitemarsh Township; that a concentration of four dwellings per acre (less roads and streets) tends to an urban rather than a rural area; that the construction of sewers and drainage problems in other parts of the township or county are irrelevant in this case; that "Of course, the defendant, in building the houses and laying out of its streets, necessarily diverted the flow of water on its own property; this was a necessary result of its proper and reasonable use of its land. The surface water enters the plaintiffs land at the same point it has entered for years, as this is the lowest point in the watershed."

The chancellor further found that defendant did not divert the surface water into artificial channels; that the development of the defendant's land for residential

use was a normal, appropriate and reasonable use of its land and in its development the defendant did not unreasonably and unnecessarily change the quantity and quality of the surface water flowing into the plaintiffs' property; and concluded that there was no negligence in developing the land; that no unnecessary damage was done to the plaintiffs; and that the damage to plaintiffs' land from the increased volume of surface water was *damnum absque injuria*.

The pertinent principles of law are reviewed and succinctly stated by Chief Justice STERN in two recent cases. In *Chamberlin v. Ciaffoni*, 373 Pa. 430, 436, 437, 96 A. 2d 140, he said: "In the recent case of Lucas v. Ford, 363 Pa. 153, 155, 156, 69 A. 2d 114, 116, it was once again stated that 'The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another, . . . He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the lower land: . . . From those rules it is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury.'

. . .

"It is only where the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner, or where, by an artificial channel, he collects and discharges surface waters in a body or precipitates them in greatly increased quantities upon his neighbor, that the latter may recover for any damage thereby inflicted: Miller v. Laubach, 47 Pa. 154; Rhoads v. Davidheiser, 133 Pa. 226, 19 A. 400; Meixell v. Morgan, 149 Pa. 415, 24 A. 216; Pfeiffer v.

Brown, 165 Pa. 267, 30 A. 844; Rielly v. Stephenson, 222 Pa. 252, 70 A. 1097; Morton v. Dormont Borough, 334 Pa. 283, 5 A. 2d 803; Lucas v. Ford, 363 Pa. 153, 69 A. 2d 114; Wilson v. McCluskey, 46 Pa. Superior Ct. 594."

The Chief Justice, delivering the opinion of the Court in *Rau v. Wilden Acres, Inc.*, 376 Pa. 493, 103 A. 2d 422, said (page 494) : "This controversy is concerned with facts rather than law. It is an action by a landowner to enjoin the owner of higher, neighboring land from artificially draining surface water from his property onto that of the plaintiff.

"From a multitude of authorities the applicable law may be summarized as follows:

"A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. One may make improvements upon his own land, especially in the development of urban property, grade it and build upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property."

President Judge KNIGHT aptly stated the vexatious problems which often arise in these cases: "The many and large real estate developments in our county in the last ten years and the building of thousands of homes have brought to the Courts many drainage problems, both sanitary and surface water. Each problem is to some extent unique and while the basic rules of law seem to be well settled, the application of these

rules to a particular case is very often a difficult matter."

We may appropriately add that a decision in each case will often depend upon the findings of fact made by the chancellor, which are based upon the credibility of the witnesses and the adequacy of the evidence. In the present case the chancellor believed the witnesses for the defendant, and since there was adequate evidence to support his findings of fact and since the principles of law which he applied were correct and controlling, we must affirm his conclusions and his decree.

Decree affirmed. Costs to be paid by plaintiffs.