442 A.2d 246

**RIDGEWAY COURT, INC.**

v.

**LANDON COURTS, INC., Benjamin F. Farrell, Sesto DiFore and Vincent A. Sparo.**

**Appeal of LANDON COURTS, INC.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed Aug. 21, 1981.

Reargument Denied March 31, 1982.

Petition for Allowance of Appeal Denied June 16, 1982.

494

Thomas J. Reilly, Upper Darby, for appellant.

Francis R. Lord, Media, for Ridgeway, appellee.

Richard C. Slama, Jr., Media, did not file a brief on behalf of Farrell, et al., appellees.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

O'KICKI, Judge:

This appeal arises from a judgment assessed by the Chancellor in equity in the amount of $15,000.00 upon Landon Courts, Inc. for alteration of the natural course of surface drainage waters.

The Plaintiff is the owner of a tract of land in the Borough of Yeadon, Delaware County, Pennsylvania. The developed portion of that tract consists of an apartment complex. The Appellant, Landon Courts, Inc., owns adjacent lands which are higher in elevation than the Plaintiff's property. Prior to the development of the Landon land, water flowed across the Landon property onto the lower rear portion of Ridgeway's land. Prior to the development in 1968, the flow of surface water was, as described by the Chancellor, ". . . evenly distributed, unconcentrated in any area, and had an insignificant effect on the Plaintiff's (Ridgeway) property."

Following the Landon's development of their respective properties, including the removal or elimination of a high land point or knoll, part of the surface water flow was diverted away from its natural course towards Lansdowne Avenue and re-directed toward and across the northerly portion of Ridgeway's property. The Plaintiff's experts testified that the Landon's development of their land created an increase in acreage of land draining onto Ridgeway's land, increased by 13% the slope of the land, and increased the concentrated and channelled surface water run-off by 4.07 cubic feet per second.

The Chancellor found that Plaintiff planned to construct an indoor tennis court at the situs where the diverted waters flow. The Chancellor found from the evidence that prior to construction of any facility, the water flow concentration must be alleviated to minimize the damage due to flooding. The Chancellor found that the cost of construction to remove the water flood hazard would add $12,000.00 cost to Ridge-

* President Judge JOSEPH F. O'KICKI, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

way's project, along with $3,000.00 in engineering fees and related costs, for a total additional cost to Plaintiff of $15,000.00. The Chancellor found that Landon was responsible for the increase in run-off of water onto Plaintiff's land.

Landon argues that every man has the right to the natural and profitable use of his own land. In support of this position, Landon cites *Leiper v. Heywood-Hall Construction Company*, 381 Pa. 317, 113 A.2d 148 (1955). The court in that *Leiper* case found that the crucial factor in denying liability was that the augmented flow of surface waters resulting from improvement of the land remained within its natural water course. The Finding Number 8 of Chancellor in this case is:

"During the course of Development of each property by each of the defendants, a high point or knoll was eliminated so that a part of the surface water flow was diverted away from its natural course towards Lansdowne Avenue and was redirected toward the rear portion of the Plaintiff's property."

 The applicable law to the facts in this case is set forth by the Supreme Court in the case correctly cited by Landon, the appellant. *Rau v. Wilden Acres, Inc.*, 376 Pa. 493, 103 A.2d 422 (1954), explains:

"From a multitude of authorities the applicable law may be summarized as follows:

A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. One may make improvements upon his own land, especially in the development of urban property, grade it and built upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property." (Citations omitted)

The Appellant also questions the ability of the lower court to enter an injunction where the situation had been remedied at the time of hearing, citing *Chamberlin v. Ciaffoni,* 373 Pa. 430, 96 A.2d 140 (1953). However, in this case, the Chancellor made no finding that the condition was remedied. Prior to 1975, there were two artificial sources of flow to the Plaintiff's property, an 18 inch pipe and an altered grade. Although there was testimony that the pipe was sealed in 1975, the evidence was uncontroverted that the defendants' removal of a hill changed the natural flow of water, which condition continued through the time of hearing.

■ The Appellant also argues that the Chancellor erred as a matter of law in assessing damages at the cost of remedying the situation rather than the difference in value of the property before and after the diversion. It has long been the rule in Pennsylvania that where loss in rental value is not sued for:

"The true measure of damages is the cost of remedying the injury, unless that equals or exceeds the value of the thing injured when such value becomes the measure." *Robb v. Carnegie Bros. & Co.,* 145 Pa. 324, 22 A. 649 (1891).

*In Frye v. Pa. Railroad Co.,* 187 Pa.Super. 367, 144 A.2d 475 (1958) the Superior Court discussed prior Pennsylvania Supreme Court cases:

"*Helbing v. Cemetary Co.,* 201 Pa. 171, 50 A.2d 970 was an action for damages to a dwelling house, caused by an accumulation of flood water which had been diverted from the opening into a storm sewer caused by a clogged grating or crib. In affirming the plaintiff's right of recovery, the Supreme Court said: 'As the injury to the plaintiff's house was not of a permanent character, the measure of damages was the cost of restoring the property to its former condition together with compensation for the loss of its use.' Substantially the same rule has been enunciated in *Eshleman v. Martic Township,* 152 Pa. 68, 25 A. 178. Cf. also *Hoffman v. Coal Co.,* 16 Pa.Super. 631; *Penna. R. R. Co. v. Pittsburgh,* 335 Pa. 449, 463, 6 A.2d 907 and 56 Am.Jur., Waters § 87."

The law with regard to damages has remained unchanged since *Frye*, supra. The rule applying damages for the correction of problems rather than merely compensating a diminution in value serves several public policies. Compensating for diminution rather than correction would tend to lower property values of lands affected with injury to both the taxing authority and the surrounding property areas. In this case, to leave a swampy area uncorrected could lead to health problems associated with stagnant waters. The Appellants continually refer to the general area as urban. Certainly, it is within the Appellee's right to develop his property into an income generating area just as the Appellant has. It is clear that the schedule of damages established by the Chancellor and the Court en banc seeks to correct a wrong inflicted by the Appellants.

For the reasons indicated above, the Opinion of the Court below is affirmed.

Affirmed.

CAVANAUGH, J., concurs in the result.