# Bower v. Hoefner

*Joanne D. Sommer,* for plaintiff.

*Gerald M. Hershenson,* for defendant Jeane Hoefner.

*Joseph Goldberg,* for defendant Township of Northampton.

*Donald F. Marshall,* for defendant Camerson S. Wilson and Edith B. Wilson.

*Marie Inyang,* for defendant PennDOT.

BORTNER, *J.,* March 14, 1986—Plaintiffs John and Elizabeth Bower filed a complaint in equity to enjoin defendant Jean Hoefner from diverting a water course and maintaining obstructions to the natural drainage course, specifically a wooden, stone and earthen barrier near plaintiffs' property line, requiring that defendant restore the previously existing swale configuration and topographical elevations of plaintiffs' property. Subsequently, defendant Hoefner filed a complaint against additional defendants Cameron and Edith Wilson, Wilson Court Associates, Township of Northampton,

and the Pennsylvania Department of Transportation. Defendant also filed a crossclaim against additional defendants alleging a variety of charges and a counterclaim against plaintiffs alleging improper alteration of a natural water course. On November 23, 1983, a hearing was held and continued while the parties attempted a settlement. Thereafter, defendant continued to expand the barrier. The hearing was resumed on August 26, 27, 29 and 30, 1985. Throughout this time defendant continued to expand the barrier. Therefore, on November 22, 1985, this court entered an order to maintain the status quo of the barrier as of the date of the order. With regard to the original complaint, we herein make the following

## FINDINGS OF FACT

1. Plaintiffs John and Elizabeth Bower, husband and wife, are owners in fee of a tract and residence situated at 59 Twining Ford Road, Northampton Township, Bucks County, Pa.

2. Original defendant Jean Hoefner is owner in fee of a tract and residence adjacent to and sharing a common boundary line with plaintiffs and situated at 43 Twining Ford Road, Northampton Township, Bucks County, Pa.

3. Additional defendants Cameron and Edith Wilson (hereinafter referred to as the Wilsons) are owners in fee of a tract and residence on 5.9 acres situated at Twining Ford Road, Northampton Township, Bucks County, Pa., the tract being adjacent to the rear property lines of plaintiffs and original defendant.

4. Additional defendant Wilson Court Associates is a Pennsylvania limited partnership and is the

owner in fee of 14.6 acres of undeveloped land adjoining the property of additional defendants, the Wilsons.

5. Additional defendant Township of Northampton is a second-class township with offices at 55 Township Road, Richboro, Bucks County, Pa., and is a political subdivision.

6. Additional defendant Pennsylvania Department of Transportation (hereinafter referred to as PennDOT) is a government agency with offices at 200 Radnor-Chester Pike, Saint Davids, Delaware County, Pa.

7. Plaintiffs purchased their tract on May 12, 1949, and subsequently built a residence thereon which was completed in 1950. Plaintiffs' property is at a higher elevation than defendant's property.

8. An area located in what is now the Wilson tract has been designated as flood-prone soil according to the soil survey of July 1975. Historically, storm water drained from this area of farmland through a natural swale which crossed the northwest corner of plaintiffs' property, down what is now defendant Hoefner's property and onto a lower meadow.

9. Plaintiffs did not alter the historical swale in building and landscaping their home.

10. Plaintiffs planted trees along their property line bordering defendant Hoefner's property approximately 35 years ago. Some trees were replaced in 1973 and 1979. These trees are now mature hemlocks, hollies and dogwoods. The trees were not planted in the path of the natural swale. The swale runs between some of the trees.

11. In 1982, plaintiffs built a detached garage below the upper course of the swale. The construction and landscaping did not interfere with the swale.

478

12. In 1975-76, defendants Wilsons built barns and a residence on their property. The Wilsons' pastures and other development slowed the water flow through the natural swale but did not alter the course.

13. Until 1981, the Hoefner property consisted of a carriage house and driveway. The house was not within the natural swale.

14. Subsequent to the purchase of the Hoefner property on October 3, 1980 by defendant Hoefner, defendant began to build an addition to the carriage house consisting of two bedrooms, two bathrooms, a breezeway and a garage. The addition was built within and directly across the natural swale. The addition was begun during a prolonged dry spell.

15. Plaintiff John Bower and defendant Cameron Wilson both advised defendant Hoefner or her agents that the addition was in the natural swale. Defendant Hoefner also had available a topographical map showing the superior elevations of plaintiffs' property and defendant Wilsons' property. Neither defendant Hoefner nor her agent Mr. Richard Sanpietro consulted aerial photographs or plans of Wilson Court Associates prepared in 1979 or other information which would have apprised him/her of the potential water hazard. Defendant Hoefner claims not to have been aware of the historical swale until June 1982.

16. In June 1982, a rain storm occurred and defendant Hoefner's buildings under construction were inundated with water running through the natural swale. Thereafter, defendant Hoefner began construction of a low timber wall 60 to 70 feet in length and five to six feet from the Hoefner-Bower property line.

17. Thereafter, defendant Hoefner also built a stone wall 20 to 30 feet in length running through

the swale parallel to the timber wall. (She subsequently removed the stone wall.) Defendant Hoefner filled the area between the walls with dirt and vegetation.

18. As a result of defendant Hoefner's erection of the barriers, the natural flow of surface storm water was deflected back onto plaintiffs' property.

19. Over the years defendant Hoefner has continued to extend the timber barrier and has brought in soil and sod which she has used to fill the natural swale. In addition, defendant Hoefner has added bales of hay and cinder blocks to the barrier.

20. As a result of defendant Hoefner's erection of barriers, storm water now flows around the bases of plaintiffs' line of trees and significant erosion has occurred in this area and has extended down the line of trees as defendant Hoefner lengthened her barrier. Storm water has been significantly increased on plaintiffs' property because of the barriers.

21. On November 23, 1983, a hearing was held in regard to plaintiffs' petition for a temporary restraining order. The hearing was continued for the purpose of attempting to reach a settlement.

22. The hearing was resumed on January 26, 1985. Arborist Robert McMullin testified for plaintiffs and noted that the erosion around the trees increased between August 1983, and January 1985. He also testified that, if allowed to continue unchecked, the storm water runoff would eventually kill plaintiffs' trees.

23. Arborist Samuel Atkinson testified for defendant Hoefner that erosion had increased in the area of plaintiffs' trees by only 1 percent between 1983 and 1985. Mr. Atkinson admitted that if erosion continued over the whole area for the next 10 years, the area would eventually wear away.

24. Photographic evidence shows that some eroded channels at the bases of plaintiffs' trees measure at least 12 inches in depth.

## DISCUSSION

There are only two questions presented by the case at bar: (1) whether a landowner may make improvements on his own land and consequently shut out the flow of surface water without incurring liability to the owner of higher land; and (2) whether a landowner may alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon his neighbor's land.

Improvements On One's Own Land — It is a well-settled principle of law in Pennsylvania that a property owner may make improvements upon his own land by grading it and building upon it without incurring liability for any incidental effect upon an adjoining property, even though the result may be some additional flow of surface water. Rau v. Wilden Acres, Inc., 376 Pa. 493, 494, 103 A.2d 422, 423 (1954); Leiper v. Heywood-Hall Construction Co., 381 Pa. 317, 321, 113 A.2d 148, 149 (1955). Moreover, the owner of the property may shut out the flow of surface water without liability to the owner of higher land so long as he does not proceed negligently. Taylor v. Harrison Construction Co., 178 Pa. Super. 544, 547, 115 A.2d 757, 759 (1955). It is only, therefore, where the landowner is guilty of negligence which causes unnecessary damage to the adjacent owner's property that the adjacent owner may recover for any damage thereby inflicted. Taylor, supra; Leiper, supra.

In the instant case, defendant Hoefner had a right to develop her lands and could do so without liability to plaintiffs for any incidental effect of addi-

tional flow of surface water. Rau, supra. But defendant Hoefner could only do so if she proceeded without negligence. Taylor, supra. The facts indicate that following the erection of the wooden barrier the storm water from the natural swale was diverted onto plaintiffs' property in such a fashion that serious flooding occurred in the area of plaintiffs' row of trees. Further, defendant continued to extend the barrier with stones, earth, sod, bales of hay and cinder blocks. With each extension of the barrier it was evident the flooding increased on plaintiffs' land and began to involve more than the first few trees in the stand between the properties. We find such actions to be negligent on the part of defendant.

Altering The Flow Of Natural Surface Water — The owner of upper land has a right to have the natural flow of waters from his property onto the property below. Kauffman v. Griesemer, 26 Pa. 407, 413, 67 Atl. 437 (1856). Consequently, the owner of the lower ground has no right to erect embankments to stop the natural flow. Id. Moreover, a landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it on his neighbor's land even though the total volume of water is unchanged. Ridgeway Court, Inc. v. Landon Courts, Inc., 295 Pa. Super. 493, 496, 442 A.2d 246, 247-8 (1981). It is the prescriptive right of the owner of higher property to allow his water to run over the lower property, and the owner of the higher land cannot divert surface waters from their natural flow by artificial means. Elliott v. H.B. Alexander & Son, Inc., 41 Pa. Commw. 184, 193, 399 A.2d 1130, 1135 (1979); Leiper, supra; Rau, supra.

The facts indicate that defendant Hoefner's barrier of wood, dirt and other matter served to block

the water which would have flowed through the natural swale and concentrated and channeled the storm water, thereby discharging the water onto plaintiffs' property. Defendant may not do so without liability. Ridgeway, supra.

The instant case is on point with Sturges v. School District of Chester, 33 D.&C. 525 (1938), and Bux-Mont Christian Church v. Recklitis (no. 74-02682-05-5, Bucks Co. C.P., filed July 20, 1976).

In Sturges, for 20 years water drained from plaintiff's property onto defendant's property. Defendant erected a wall to prevent the water from flowing onto its property and filled in the natural channel. The court in Sturges held that while the owner of the lower land may in proper cases take steps to prevent surface water from coming onto his land, he has no right to discharge the water naturally falling onto his land, upon the land of the owners of the higher land. Sturges, supra, at 529. In Bux-Mont, plaintiff was also the owner of the higher land. Defendant constructed an earthen berm which served to interfere with the natural drainage of surface water onto its lands and to collect the waters onto plaintiff's higher property.

The facts in the instant case are similar to both of the aforementioned cases. Plaintiffs are owners of the higher ground. Water historically ran from the Wilson tract above, onto plaintiffs' northwestern corner and then to defendant Hoefner's property through a natural swale. When defendant Hoefner constructed the timber wall, the natural surface storm waters were almost exclusively diverted onto a large area of plaintiffs' land planted in trees and heretofore undisturbed. As a result, plaintiffs' land has been damaged.

Additional Defendants — It is clear from the record presented that additional defendants Wilson

have done nothing to alter the historical path of the surface water. The record does not significantly implicate any of the named additional defendants as contributing to plaintiffs' cause of action nor of creating a cause of action in original defendant.

For the foregoing reasons and based upon the foregoing findings of fact, plaintiffs are entitled to relief, defendant's counterclaim is denied and defendant's cause of action against additional defendants is denied.

## DECREE NISI

And now, this March 14, 1986, it is hereby ordered and decreed as follows:

1. Defendant Hoefner shall forthwith remove the artificial barrier along the entirety of the boundary between her property and that of plaintiffs and restore the surface along the boundary line to the condition which it had been in prior to the construction of the barrier such that water is not discharged onto plaintiffs' property.

2. Defendant Hoefner shall cease and desist from bringing in any more dirt and thereby creating an earthen berm which would cause the natural flow of storm water to be diverted onto plaintiffs' property.

3. Defendant Hoefner shall cease and desist from obstructing in any way the natural flow, drainage and runoff of surface water from plaintiffs' property in any way which would increase the natural flow onto plaintiffs' property.

4. Defendant Hoefner shall restore the area around plaintiffs' trees to alleviate the effect of erosion caused by the erection of defendant's dam.

5. The parties are to pay their own costs.

This order will stay upon timely filing of exceptions according to Rules of Court.