IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith A. Howarth,                    :
                    Appellant        :
                                     :
        v.                           :        No. 447 C.D. 2021
                                     :        Argued:  December 4, 2023
Falls Township                       :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY SENIOR JUDGE LEAVITT              FILED:  February 14, 2024


        Keith A. Howarth (Howarth) appeals the March 26, 2021, order of the
Court of Common Pleas of the Forty-Fourth Judicial District, Wyoming County
Branch (trial court), that granted summary judgment to Falls Township (Township),
defendant in Howarth's civil action for damages to his property caused by the
Township.   Howarth contends that the trial court erred because the evidence
established that the Township's installation of a culvert under a road adjacent to his
property constituted an alteration of land that triggered the requirements of the Storm
Water Management Act.[1]  Howarth also contends that the trial court erred in holding
that the Township's creation of an artificial channel to discharge water onto his
property did not state a common law negligence claim, the first step in any claim
brought under what is known as the Political Subdivision Tort Claims Act.[2]  We
reverse the trial court's order.

---

[1] Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. §§680.1-680.17.
[2] 42 Pa. C.S. §§8541-8542.

Howarth owns and resides at property located at 17300 Creek Hollow Drive, Falls Township in Wyoming County, Pennsylvania (Property). In his brief, Howarth offers the following description of the Property, the surrounding landscape, and the flow of storm water around and onto the Property.

> The Property is located in the bed of a valley near a shallow creek. Creek Hollow Drive, a public highway that [the Township] owns and maintains, runs adjacent to the Property from the peak of one hillside downward towards the valley bed, and then over the creek into the next hillside. Presently, *storm water that runs along the east of Creek Hollow Drive is captured and artificially directed through an 18-inch diameter pipe that runs under Creek Hollow Drive . . .*, ultimately causing the storm water to discharge *onto* [*Howarth's*] *property*[.]

Howarth Brief at 11 (emphasis added). Howarth contends that the storm water discharged from the Township's 18-inch-wide pipe onto his Property has caused damage, such as erosion in the form of a 14-inch-deep ditch that he must continually fill. The Township's culvert also washes debris, such as garbage and silt, into his yard.

On June 12, 2017, Howarth filed a civil complaint against the Township, seeking damages. The complaint alleged that the Township's "storm water drainage system" has channeled storm water "in an excessive and concentrated fashion onto [Howarth's] properties." Complaint, ¶¶6-7. Howarth's complaint raised four counts: Count I asserted continuing trespass; Count II asserted continuing private nuisance; Count III asserted negligence; and Count IV asserted violations of the Storm Water Management Act. The Township filed an answer denying the allegations on the basis of insufficient knowledge or that they stated conclusions of law that did not require a response. In new matter, the Township

2

raised several defenses including, *inter alia*, governmental immunity, assumption of risk, estoppel, and comparative negligence.

At his deposition, Howarth testified that when he purchased the 11.77-acre Property in 2000, it was vacant. Previously, it had been used to raise livestock. Howarth put a mobile home on the Property and lived there during the construction of his house, which was completed in 2005.

Howarth testified about his conversations with Robert Kenia (Kenia), a former Township supervisor and road crew foreman for the Township. Howarth met Kenia when he sought a permit for his driveway.[3] At that time, Kenia stated that water collects in the lower level of the Property. Howarth believed, nevertheless, that his plan to install a pipe from that part of his Property to the nearby creek would address the problem.

Howarth testified that the Township's current 18-inch pipe under Creek Hollow Drive was not in place when he purchased the Property and that it was installed in 2008 or 2009. When shown a subdivision map from 2000, Howarth acknowledged the presence of a pipe on the map but stated that the outlet was covered by vegetation and could not be seen. Howarth testified that he requested the Township remove the pipe because it was diverting water to his septic mound tank. His request was denied, but the Township re-graded the Property to protect the septic system. Howarth testified that although he installed the septic system in 2000 or 2001, he did not experience trouble until 2008 or 2009.

Howarth testified that at a 2017 meeting of the Township supervisors, he "[t]old them there was a problem[,] and it needed to be solved." Howarth Dep.

---

[3] In his deposition, Howarth testified that he had been in a motor vehicle accident in 2010, sustained "severe head trauma[,]" and "[m]emory loss [was] one of [his] problems." Howarth Dep. at 36; Reproduced Record at 154a (R.R. __).

at 104; R.R. 222a. Howarth wanted the pipe removed because it was causing erosion and damage to the Property. The supervisors responded that they would not remove the pipe.

Howarth identified gun shells, 32-ounce bags of garbage, rocks, bottles, and waste from McDonald's in photographs of his Property that had been taken prior to the 2017 meeting with the Township supervisors. Howarth testified that this debris is carried from the pipe under Creek Hollow Drive onto his Property; accumulates in various amounts at various times; and requires an annual cleanup. He noted that garbage appeared on the Property again in 2018, after the season's snow had melted. Howarth testified that the water runoff and the garbage that collects prevents him from mowing the affected area of his Property and restricts where his grandchildren are allowed to play.

Kenia was also deposed. He explained that he began employment with the Township in 1970 and retired in December 2018. He testified that he informed Howarth about water pooling on the Property prior to Howarth's purchase. Kenia testified that when Howarth asked the Township to remove the pipe, he explained that it could not be done without exponentially increasing storm water runoff onto a neighboring property. Kenia testified that an 18-inch galvanized pipe under Creek Hollow Drive had been installed before he began his career with the Township and that the Township received no complaints about the pipe from the Property's prior owners.

Kenia explained that the Township constructed a swale on the Property to protect Howarth's sand mound and septic tank from discharge from the pipe. The Township also built a catch basin to collect debris at the pipe outlet before it reached

4

the swale. He stated that the Township periodically cleans the catch basin when it fills up with sediment, stones, and other debris.

Kenia testified that in 2004 the galvanized pipe was replaced with a smooth-bored plastic pipe of the same dimension because the galvanized pipe had rusted and become clogged. He acknowledged the galvanized pipe ceased to function approximately two to three years before its replacement and that the pipe was clogged when Howarth purchased the Property. The Township "just kept cleaning it out a little bit, but then it got to a point where [it] couldn't clean it out [any] more." Kenia Dep. at 82; R.R. 69a.

Kenia testified that after installation of the swale and catch basin, Howarth did not complain to the Township about storm water discharge from the pipe. However, after a March 2017 snowstorm dropped 32 inches of snow, Howarth appeared at a Township meeting and complained about sediment and debris collecting on his Property. One of the Township supervisors agreed to visit the Property to view the damage alleged by Howarth but reported that he "didn't see much." Kenia Dep. at 41; R.R. 58a. Kenia stated that he also drove by the Property a few days later and, likewise, did not see anything.

The Township presented an expert report from Val F. Britton (Britton), a professional geologist, with V.F. Britton Group, LLC, an environmental and hydrogeological consulting firm. Britton conducted a reconnaissance of the Property, reviewed Howarth's complaint, transcripts of testimony in the case, and weather and other records, maps, and aerial photographs of the Property and surrounding area, taken at various points in time since 1981. Expert Report, 10/14/2020, at 1-20; R.R. 99a-118a.

5

Britton's report reached several conclusions: (1) soils in the area have poor permeability; (2) significant discharge from the pipe onto the Property occurs during storms; (3) the majority (78%) of the flooding on the Property results from overland flow of water; (4) approximately 22% of the flooding on the Property results from the pipe; (5) were the pipe to be removed, storm water would damage Creek Hollow Drive and a neighboring property; and (6) the original swale on the Property was changed between 1995 and 2004,[4] but the pipe under the road has been there from at least 1981. Expert Report, 10/14/2020, at 6; R.R. 104a. In sum, when a significant storm produces a pooling of water on the Property, 78% is derived from the overland movement of water, and 22% is derived from discharge from the pipe.

Upon conclusion of discovery, the Township filed a motion for summary judgment in its favor. Therein, it asserted that (1) Howarth had failed to produce evidence to support his claims; (2) the claims for trespass and nuisance were barred by governmental immunity; (3) the Township's actions were reasonable and did not alter the quantity, quality, or flow of water discharged onto the Property; (4) Howarth was aware of water runoff issues prior to purchasing the Property; and (5) Howarth's claims were barred under the assumption of risk doctrine and by the statute of limitations. Howarth answered the motion but did not file his own summary judgment motion.

The parties requested that the trial court decide the summary judgment motion on the briefs. Prior thereto, Howarth withdrew Counts I and II (continuing

---

[4] Britton noted that "[n]o apparent drainage swale is evident on the 2004 aerial photograph; however, disturbance in the area of the drainage swale observed during the September 23, 2020[,] site reconnaissance was observed on this photograph suggesting possible construction at this time." Expert Report, 10/14/2020, at 4; R.R. 102a.

6

trespass and private nuisance). The trial court granted the Township's motion for summary judgment.

Beginning with governmental immunity, the trial court explained that damage actions can be brought against municipalities in certain excepted cases, such as those involving a dangerous condition of a utility service owned by a local agency,[5] but concluded that the Township could not be held liable to Howarth for an inadequate storm water system because it is under no duty to build such a system in the first place. Citing *McCarthy v. City of Bethlehem*, 962 A.2d 1276 (Pa. Cmwlth. 2008), the trial court explained that the Township could be held liable for negligent construction of a water collection system, but Howarth had not provided evidence of negligent construction or maintenance of the pipe. In short, Howarth's evidence did not show a claim for negligence under the common law.

The trial court next addressed Howarth's contention that the Township violated the Storm Water Management Act by failing to manage storm water runoff. The trial court found that there was no evidence, "such as an expert report or the like," to support Howarth's claim that the Township had *altered or developed* the land in a way that could increase storm water runoff to the Property. Trial Court Op., 3/26/2021, at 9; R.R. 349a.

Based on these conclusions, the trial court granted judgment to the Township on Counts III and IV.[6] Howarth appealed to this Court.[7]

On appeal, Howarth raises two issues.

---

[5] *See* 42 Pa. C.S. §8542(b)(5).

[6] The trial court also dismissed Counts I and II, which had been withdrawn by Howarth.

[7] Our standard of review of an appeal from a trial court's entry of summary judgment is *de novo* and our scope of review is plenary. *City of Philadelphia v. Cumberland County Board of Assessment Appeals*, 81 A.3d 24, 44 (Pa. 2013).

7

First, Howarth contends that when the record evidence is viewed in the light most favorable to him as the non-moving party, there is a material factual question of whether the Township engaged in an alteration or development of land that had the potential to affect storm water runoff, thereby triggering the requirements set forth in the Storm Water Management Act.

Second, Howarth asserts that when the record evidence is viewed in the light most favorable to him as the non-moving party, there is a material factual question as to whether the Township's installation of the new pipe constituted new construction, not a repair, for which it was foreseeable that the new pipe could cause damage to the Property, thereby subjecting the Township to liability under the common law.

We begin our analysis with a review of the applicable law.

The Storm Water Management Act creates a remedy for damages where a person's conduct violates its provisions. It states, in relevant part, as follows:

> (c) Any person injured by conduct which violates the provisions of section 13 may, in addition to any other remedy provided under this act, recover damages caused by such violation from the landowner or other responsible person.

Section 15(c) of the Storm Water Management Act, 32 P.S. §680.15(c). In turn, Section 13 states as follows:

> Any landowner and any person engaged in *the alteration or development of land* which may affect storm water runoff characteristics *shall implement such measures* consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required:

8

(1) to assure that the *maximum rate of storm water runoff is no greater after development than prior to development activities*; or

(2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

32 P.S. §680.13 (emphasis added).

The provisions of the Political Subdivision Tort Claims Act relevant to this appeal follow:

**§8541. Governmental immunity generally.**

Except as otherwise provided in this subchapter, no local agency[8] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S. §8541.

**§8542. Exceptions to governmental immunity.**

**(a) Liability imposed.--***A local agency shall be liable* for damages on account of an injury to a person or property within the limits set forth in this subchapter *if both of the following conditions are satisfied* and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) *The damages would be recoverable under common law* or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) *The injury was caused by the negligent acts of the local agency* or an employee thereof acting within the scope of his office or duties with respect to one of the categories

---

[8] Townships are a "local agency" for purposes of the Political Subdivision Tort Claims Act. *See* 42 Pa. C.S. §8501 (relating to matters affecting government units, definitions).

9

listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

**(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

> **(3) Real property.--**The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
>
>> (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
>>
>> (ii) facilities of steam, sewer, gas and electric systems owned by the local agency and located within rights-of-way;
>>
>> (iii) streets; or
>>
>> (iv) sidewalks.
>
> . . . .
>
> **(5) Utility service facilities.--**A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the *dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances* of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. §8542(a)-(b)(3), (5) (emphasis added). To hold a political subdivision liable for damages, a plaintiff must first demonstrate a claim under the common law and, next, an exception to immunity.

The Pennsylvania Rules of Civil Procedure authorize either party to seek judgment in advance of trial. PA.R.CIV.P. 1035.2.[9] Rule 1035.2 has been construed as follows:

> [W]e will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Construction Corporation v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013). Our Supreme Court has explained that the purpose of summary judgment is "'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Curran v. Philadelphia Newspapers, Inc.*, 439 A.2d 652, 658 (Pa. 1981) (quoting *Phaff v. Gerner*, 303 A.2d 826, 829 (Pa. 1973)). Specifically,

> [i]n considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

---

[9] "After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law[.]" PA.R.CIV.P. 1035.2. It states:

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

*Id.*

11

Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt . . . .

*Toy v. Metropolitan Life Insurance Company*, 928 A.2d 186, 195 (Pa. 2007) (citations omitted).

With these precepts in mind, we review the issues raised by Howarth.

In his first issue, Howarth contends that the trial court erred in entering summary judgment in favor of the Township on his claim under the Storm Water Management Act. The trial court did so for the stated reason that Howarth did not present expert evidence to show that the Township's pipe effected an "alteration or development of land," which is the threshold to a claim under the Storm Water Management Act. Section 13 of the Storm Water Management Act, 32 P.S. §680.13. Howarth argues that expert testimony was not necessary to make this threshold demonstration.

In support, Howarth directs the Court to *Cogan House Township v. Lenhart*, 197 A.3d 1264 (Pa. Cmwlth. 2018), which established the principle that a substantial, human-created change to land constitutes a land alteration or development for purposes of the Storm Water Management Act. Howarth argues that the pipe in question was clogged and not functioning when he purchased the Property and for years afterward. The Township's failure to maintain the pipe constituted human-related conduct that changed the characteristics of the land. *A fortiori*, the Township's installation of a new pipe, which increased the flow of storm water onto the Property, constituted an alteration to the land.

In *Cogan House Township*, the township approved the request of two gas companies to undertake road improvements in anticipation of gas drilling activities in the area. Prior to the improvement, the road was gravel-covered and 12 to 16 feet wide, with 2-foot stone shoulders. The improvement produced a 1-mile

12

long paved 16-foot cartway with a 4-foot stone shoulder on both sides. Pipes under the road were replaced with similar-sized pipes, and a completely clogged and buried 6-inch diameter pipe was replaced with a 24-inch pipe. The township's civil engineer admitted that the installation of the new pipes increased the flow of water, but this would not have been the case had the previous piping been "properly maintained and cleaned out on a periodic basis." *Cogan House Township*, 197 A.3d at 1271 (quotation omitted).

In *Cogan House Township*, the trial court reasoned that the installation of the new pipe did not constitute an alteration or development of the land within the meaning of the Storm Water Management Act because the new pipes were installed in their original locations. This Court reversed. Noting that the Storm Water Management Act provides no definition of "alteration or development of land," *Cogan House Township*, 197 A.3d at 1268, we concluded that the phrase meant a "'substantial, human-created change to land.'" *Id*. (quoting Black's Law Dictionary 516 (9th ed. 2009)). We further explained that the key question is whether the substantial change to the land is one that could have had an effect on drainage runoff characteristics. *Cogan House Township*, 197 A.3d at 1270-71.

In the present matter, Howarth argues that the trial court erred in holding that an expert report was needed to establish a "substantial, human-created change to land." The Township's own witness, Kenia, established that the pipe was not functioning when Howarth purchased the Property; the Township had not replaced or cleaned out the clogged pipe for years; and the Township installed a new pipe after Howarth had purchased the Property. Howarth argues that regardless of whether the pipe was replaced in 2004 or 2008, the Township's expert report confirmed that the original pipe had not properly functioned for years and that the

13

Township's new pipe increased the flow of storm water onto the Property.[10] These uncontested facts establish a human-created substantial change to land, as was the case in *Cogan House Township*, 197 A.3d at 1270-71.

In holding that Howarth was required to offer expert testimony to establish that the Township's installation of the new pipe constituted an alteration of land, the trial court erred. No such requirement is stated in the Storm Water Management Act or suggested in *Cogan House Township*.

Both Kenia's testimony and the Township's expert report established that the pipe had not been functional for years before its replacement. Now, it channels water onto the Property and does so effectively. Howarth notes that, as in *Cogan House Township*, 197 A.3d at 1270, "the Township was unable to dispute, and in fact agreed, that an increase in water volume resulted from the piping installed and the work performed." Likewise, here, the Township did not refute Howarth's evidence that the new pipe has increased the volume of water flowing onto the Property.

Kenia stated that the length, diameter, location, function, and capacity of the new pipe were the same as the previous one. Kenia Dep. at 24-25; R.R. 54a. The Township believes that given this fact, the replacement of a decades-old, metal pipe with a plastic pipe in the exact same location did not constitute an alteration of land. This argument was rejected in *Cogan House Township*.

Unlike its predecessor, the new pipe effectively channels storm water onto the Property. The Township's expert, Kenia, and Howarth testified about the increased flow of water effected by the installation of the new pipe. Instead of

---

[10] In his brief, Howarth argues that the Township's replacement of the pipe caused a "22% increase in damage to [his] [P]roperty." Howarth Brief at 24-25. The Township argues that this mischaracterizes the expert report. Howarth argues it is a reasonable inference from that report.

considering this evidence, the trial court held, in error, that an expert report was needed to prove an alteration or development of land.

Alternatively, the Township argues that the trial court properly dismissed Howarth's Storm Water Management Act claim because the Township is immune from such claims under the Political Subdivision Tort Claims Act.[11] The Township believes that the trial court "rightly recognized" that because this statutory claim is not listed as one of the exceptions to governmental immunity set forth in "Section 8542(b), it could not pierce the cloak of governmental immunity[.]" Township Brief at 40. Stated otherwise, the Township argues that the trial court apparently believed that the Political Subdivision Tort Claims Act has implicitly repealed the Storm Water Management Act, at least with respect to political subdivisions such as the Township.

Prior to the abrogation of sovereign immunity, the legislature enacted numerous statutes that subjected both state and local agencies to liability to third parties. They include, for example, The Clean Streams Law[12] and the Pennsylvania Human Relations Act.[13] An implicit repeal of any statute is exceedingly rare, and it did not happen here. *See generally Maine Community Health Options v. United States*, 590 U.S. __, 140 S. Ct. 1308, 1323 (2020) ("[R]epeals by implication are not favored," *Morton v. Mancari*, 417 U.S. 535, 549 (1974) (internal quotation marks omitted), and are a "rarity," *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 142 (2001) (internal quotation marks omitted)). The Political

---

[11] In its brief, the Township argues that Howarth did not prove an "applicable watershed storm water plan." Section 13 of the Storm Water Management Act, 32 P.S. §680.13. It did not raise the issue in its motion, and it was not addressed by the trial court. It is waived.

[12] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

[13] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

15

Subdivision Tort Claims Act relates to common law claims, and it does not immunize the Township against claims brought under the Storm Water Management Act.

In his second issue, Howarth argues that viewing the record evidence in the light most favorable to him, there is a genuine issue of material fact as to whether the Township's installation of the new pipe to divert storm water from its natural channel onto his Property unreasonably increased the quantity of water being discharged onto the Property. Further, there is no question that the Township knew that the new pipe affected the flow of water onto the Property.

The elements of a negligence claim are as follows: (1) a duty of the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks, (2) failure by the defendant to conform to said standard, (3) a causal connection between the defendant's conduct and the resulting injury, and (4) actual loss or damage resulting to the plaintiff. Trial Court Op. at 6 (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)); R.R. 346a.

This Court has held that a political subdivision cannot be held liable for insufficient or inadequate capacity of storm water facilities because it is under no duty to erect storm water facilities. *City of Washington v. Johns*, 474 A.2d 1199, 1201-02 (Pa. Cmwlth. 1994). Relying on *City of Washington*, the trial court held that under the common law, the Township can be held liable only for the negligent construction of the storm water system, not for its inadequacy. The trial court held that the evidence did not support Howarth's claim that the Township's negligence was the proximate cause of the damage to his Property.

Viewing the record in the light most favorable to the non-moving party, Howarth contends that the record evidence is sufficient to make a negligence claim.

16

In support, he directs the Court to *Staffaroni v. City of Scranton*, 620 A.2d 676 (Pa. Cmwlth. 1993). There, the city placed a 15-inch diameter pipe under a road to collect runoff water and deposit it onto the property adjacent to the road. The property owners asked the city to remove the pipe, but it refused. The property owners filed a complaint against the city, in equity and in tort, for damage caused to their property by water from the pipe. The trial court ordered the city to block the pipe and compensate the landowners for the damage done to their property.

On appeal, this Court affirmed, holding that landowners' claim fell within the real estate exception to the Political Subdivision Tort Claims Act, 42 Pa. C.S. §8542(b)(3). Because the pipe was intended to relieve a recurring problem with the road, the damage to the landowners' property was foreseeable. Further, "'a landowner may not alter the natural flow of surface water [] by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor, even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition.'" *Staffaroni*, 620 A.2d at 193 (citing *Leiper v. Heywood-Hall Construction Company*, 113 A.2d 148, 150 (Pa. 1955)).

*Leiper* concerned a suit in equity filed against a developer who built a residential development of 149 dwellings on 56 acres of former farmland and did so without installing gutters, sewers, reservoirs, or drains to carry off surface water. The landowners contended that the developer's regrading of lots on the property increased the surface water runoff onto their property. The *Leiper* Court summarized the prevailing law as follows:

> "The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another [. . .]. He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the

17

lower land. [. . .] From those rules it is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury . . . ."

"It is only where the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner, *or where, by an artificial channel, he collects and discharges surface waters in a body or* precipitates them in greatly increased quantities upon his neighbor, *that the latter may recover for any damage* thereby inflicted[.]"

*Leiper*, 113 A.2d at 149 (quoting *Chamberlin v. Ciaffoni*, 96 A.2d 140, 142-43 (Pa. 1953)) (emphasis added). In short, the owner of land is liable to his neighbor when "by an artificial channel, he collects and discharges surface waters" upon his neighbor. *Leiper*, 113 A.2d at 149

In *Leiper*, the Supreme Court concluded that the landowners' damage from "the increased volume of surface water was a *damnum absque injuria*" because there was no artificial channel. *Leiper*, 113 A.2d at 149. The developer was permitted to improve his own land so long as he did "not alter the natural flow of surface water on his property by concentrating it in an artificial channel[.]" *Id*. at 150. Absent the creation of an artificial channel, the landowners did not state a negligence claim.

Here, Howarth argues that the record shows that as in *Staffaroni*, the Township created an artificial channel of water at a time when the Township was on notice that he resided on his Property. As in *Staffaroni*, Howarth contends that the damage to his Property was the foreseeable consequence of its installation of a new pipe under Creek Hollow Drive. Accordingly, this evidence states the essence of a negligence claim under the common law. *See R.W.*, 888 A.2d at 746.

The Township responds that Howarth did not produce evidence that the pipe was in a "particularly dangerous condition." Trial Court Op. at 7; R.R. 347a.

18

A "dangerous condition" is simply a "defective or dangerous" condition, and the owner of the property has the duty to maintain the property to "minimize and reduce risk" of injury. *Essington v. Monroe County Transit Authority*, 302 A.3d 219, 236 (Pa. Cmwlth. 2023) (citing *Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018)). A dangerous or defective condition is one that creates a risk of injury, either injury to body or injury to property. *Essington*, 302 A.3d at 236.

The trial court's conclusory statement that the pipe was not "particularly dangerous" was *obiter dictum*. Further, the statement lacked any supporting analysis and, thus, will not be further addressed. The stated holding of the trial court was that the evidence did not support a negligence claim under the common law, and the trial court erred in this regard.

For the foregoing reasons, we reverse the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith A. Howarth,  :
          Appellant  :
            :
          v.  :      No. 447 C.D. 2021
            :
Falls Township  :

# **O R D E R**

AND NOW, this 14th day of February, 2024, the March 26, 2021, order of the Court of Common Pleas of the Forty-Fourth Judicial District, Wyoming County Branch, granting Falls Township's motion for summary judgment in the above-captioned matter is REVERSED.

_____

MARY HANNAH LEAVITT, President Judge Emerita